## TOOLE v. JOHNSON.

1. PARTIES.—Where one of the parties plaintiff has not authorized bringing an action, no relief should be granted to him, and this question having been made by the pleadings here, should have been decided.

2. SUBROGATION—DEED—SALE—CHILLING BIDDING—FRAUD.—THE WIFE has no right to demand that the purchase money of land paid by her husband (deed made to her) should be refunded to her as a condition precedent to setting aside the deed for chilling bidding at sale.

3. SALE—CHILLING BIDDING—FRAUD.—Announcement made by attorney before sale that he hoped that nobody would bid against A., as he would bid the amount of the judgment, and bid in land for children of decedent, is chilling a sale.

4. IBID.—IBID.—IBID.—LIMITATIONS OF ACTIONS—DEEDS.—In an action to set aside a deed to land made from public sale under execution because of chilling bidding, the statute only begins to run against party in interest seeking to set aside sale from time of discovery of the fraud.

5. IBID.—IBID.—IBID.—IBID.—NOTICE.—Code, 112, sub. 6, applies to frauds at public sales as well as to secret frauds generally.

Before GARY, J., Aiken, September, 1900. Modified.

Action to set aside deed by J. G. Toole, Hettie M. Toole and E. G. Toole against Lavinia Johnson. From judgment for plaintiffs, defendant appeals.

*Messrs. Hendersons,* for appellant, cite: *In case like this statute runs against minor:* 26 S. C., 241; 29 S. C., 247; 33 S. C., 35; 38 S. C., 500; 47 S. C., 133. *It is not public policy to set aside a public sale more than twenty years after made:* 4 Strob. Eq., 155; 6 Rich. Eq., 283. *Exception that statute runs against fraud only from date of knowledge of,*

*does not apply to a public sale: Code,* 114; 13 S. C., 383.; 30 F. R., 537; 1 Hill, 298; 21 Wall., 347. *If a minor have knowledge of facts sufficient to put him upon inquiry, which if followed would have led to knowledge, then in this sort of case he must bring his action in one year after attaining his majority:* 6 Rich. Eq., 101, 140; 25 S. C., 413; 101 U. S., 138; 4 Strob. Eq., 196; 4 Rich. Eq., 101.

*Messrs. G. W. Croft & Son,* contra, cite: *If competition at judicial sale be stifled, it will be set aside:* 8 Ency., 832; 3 Rich. Eq., 424; 31 S. C., 73; 38 S. C., 358. *Statute of limitations is not set in motion until discovery of fraud:* 18 S. C., 528; 4 S. C., 249; 34 S. C., 153.

July 1, 1901.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   This action was commenced on the 9th day of May, 1899.   The facts are thus set out in the complaint:

"I.  That Warren Toole died in 1874, leaving as his only heirs at law, his children, the plaintiffs herein, and W. W. Toole and Mrs. Ida Sprowles, and the defendant, Lavinia Johnson; that he died seized and possessed of the following tract of land: 'All that tract or parcel of land, situate in the county of Aiken and State of South Carolina, containing 380 acres, more or less * * *'

"II.  That Hansford D. Johnson was the husband of the defendant, Lavinia Johnson, and administered on a considerable personal estate of the said Warren Toole; that the said Hansford D. Johnson died in 1896.

"III.  That in 1877, the tract of land hereinbefore described was advertised for sale under an execution against the said Warren Toole and in favor of one B. Weathersbee, on which there was due about $200; that at said sale the attorney for the administrator of said Warren Toole, in behalf of Hansford Johnson, announced to those at and attending said sale, when the land was put up for sale, that Hansford D. Johnson was going to bid it off for the children

of Warren Toole; that said announcement chilled the bidding, and kept others who would otherwise have bid at said sale from doing so, and thereby fraudulently destroyed competition, and caused said property to be bid off at $200 less price than it otherwise would have brought, and one that was not anything like its value at that time; that it was bid off and paid for by Hansford Johnson and entered on the sales book of the sheriff in the name of his wife, the defendant herein, and the deed was executed to her by the sheriff.    And the plaintiffs further allege that they have only had knowledge of such illegal and fraudulent conduct at such sale within six years next before the commencement of this action.

"IV.  That the said Hansford D. Johnson, before he died in 1896, settled with W. W. Toole and Mrs. Ida Sprowles, two of the children of the said Warren Toole, for their interest in said tract of land, and are, therefore, not made parties to this action; the defendant herein has also received her full share of said tract of land by the sale hereinafter stated.

"V.  That the defendant, Lavinia Johnson, and Hansford D. Johnson, her husband, in 1894 conveyed 190 acres of said tract of land, being all that part thereof lying on the west of the public road leading from Aiken to Rouse's Bridge, to one E. A. Eubanks, for $1,500, and is still in possession, claiming it as her own, of 190 acres, lying * * *

"Wherefore, the plaintiff asks judgment: 1. That said sale be set aside and the deed to the defendant, Lavinia Johnson, cancelled, and the title to said tract of land, now in the possession of the defendant, declared to be in the plaintiffs. 2. For such other relief as is equitable and just."

The defendant, answering the complaint, says:

"For a first defense: That she denies each and every allegation in the said complaint contained, except what may be hereinafter specifically admitted.  She admits that the plaintiffs were children of Warren Toole, and that she purchased the tract of land in question at a sale by the sheriff of

Rep.] April Term, 1901.

Aiken County, said sale being made under an execution against the property of Warren Toole.

"For a second defense, she pleads the statute of limitations, laches, lapse of time, and acquiescence in the sale; and furthermore, that the plaintiff, E. G. Toole, did not authorize the bringing of this action.

"For a third defense, she alleges that she was the owner in fee, and that the plaintiffs are not the owners of the land or entitled to any part thereof.

"For a fourth defense, she sets up a title by adverse possession."

The case was heard by his Honor, the Circuit Judge, on testimony taken by the master. His decree concludes by ordering and adjudging "that said sale be set aside and the deed of the defendant, Lavinia Johnson, described in said complaint, be cancelled." From this decree the defendant appealed.

The first exception is as follows: "1st. It is respectfully submitted that his Honor, Judge Gary, erred in not finding, as is shown by the testimony, that the plaintiff, E. G. Toole, did not authorize the bringing of this action, hence that no relief in any respect ought to be granted to him." The record shows that J. G. Toole testified as follows on cross-examination: "Q. Where is your brother Gilbert? A. I don't know. Q. How long since you have seen him? A. Three years * * * Q. Did you authorize the bringing of this action for your brother? A. Yes, sir. Q. Did your brother Gilbert authorize you to employ a lawyer to bring this suit for him? A. He did not."

When examined by plaintiffs' attorneys, he testified: "Q. Did you ever have any talk with your brother Gilbert about getting your and his interest in this property? Defendant's counsel objects to any talk between one plaintiff, Gilbert Toole, and the other plaintiff, J. G. Toole. A. I told him I was thinking about getting somebody to look into it for me, and see if there was any chance of getting our share of

the estate, and he told me all right, to go ahead and do what
I could, that he would be away, and could not be with us."

The issue as to whether E. G. Toole authorized the bring-
ing of this action, was raised by the pleadings and should
have been decided. We are satisfied from the testimony
that the exception should be sustained.

The second exception is as follows: "2d. It is respectfully
submitted that his Honor, Judge Gary, erred, whilst he de-
creed that the sale of the land in question should be set
aside, in not decreeing that the money paid by Mrs. Johnson,
as her bid at the sale, with the interest, should be
refunded to her as a condition precedent of the set-
ting aside of the sale." The testimony shows con-
clusively that the purchase money of the land was not paid
by the defendant, but by her husband; she, therefore, has no
right to claim that this money should be refunded to her.
*Jennings* v. *Hare*, 47 S. C., 279. If there was a right of
subrogation arising from the fact that the purchase money
was used in satisfying the demands of creditors of the estate,
it existed in favor of her husband and not in her favor.

The third exception is as follows: "3d. It is respectfully
submitted that his Honor, Judge Gary, erred in setting aside
the sale by the sheriff at all, because he should have found
that the facts and circumstances surrounding the sale did
not authorize the setting aside of the sale; and fur-
ther, that the sale being a public sale at public auc-
tion, all declarations and transactions which took
place there were presumed to be known to all parties inter-
ested, and that the statute of limitations began to run against
the sale from the date of the sale." In disposing of that
part of the exception raising the question of error on the
part of the Circuit Judge in setting aside the sale, and urging
that he should have found that the facts and circumstances
surrounding the sale did not authorize the setting aside
thereof, it is only necessary to refer to that part of the said
decree disposing of this question. The Circuit Judge says:
"Was such an announcement made at the sale as would chill

the bidding, and thereby operate as a fraud upon the plaintiffs? To answer this inquiry it is necessary to review some of the testimony as to what occurred at the sale.

" 'Mike Howard, sworn for plaintiffs, testified: Q. When that property was put up for sale, Mr. Howard, was there any statement made by anybody? A. Nobody but what Judge Aldrich said. Q. What did he say? A. He said he hoped nobody would bid him in, he wanted to buy it for the children. Q. Was that announcement made before the sale was made? A. Yes, sir, before the sale commenced. Q. You remember what Judge Aldrich stated—what was it he said? A. I recollect him saying those words, that he wanted to buy it in for the children, for their benefit; I don't think there was but one bid.'

" 'John Wooley, examined: Q. At that sale, Mr. Wooley, do you remember any announcement made by anybody, and if so by whom? A. Lawyer Aldrich, he said he hoped—I think that was his words—hoped nobody would bid, it was to be bought for the children.'

" 'J. H. Busch, examined: Q. Did anybody come to you about bidding on the property? A. Yes, sir, Judge Aldrich came to me. Q. Go ahead and state what he came to you and said, Mr. Busch? A. I don't exactly remember now. I went down to try to secure myself of what they owed me. He gave me satisfaction and told me I would be paid, as near as I remember. Q. Did he say anything about bidding on the land? A. He told me when he spoke that they would secure me. Q. Did he tell you, Mr. Busch, that if you would not bid on the land, that you would be satisfied? A. I don't remember that he told me those words— I don't know if he told me anything about bidding on the land, he may have or not. I went there with the understanding of bidding on the land. They gave me satisfaction and I paid no more attention to it. Q. Mr. Busch, would you have bid on that land if Judge Aldrich had not have told you what he did? A. If Mr. Aldrich and Johnson had not told me they would satisfy me, of course, I

would have bid on the land. Q. These gentlemen promised to satisfy you, did they afterwards pay you? A. Yes, sir; Johnson told me before the sale, that if he could arrange it as he wanted, he would give me $100. Q. And he gave you the $100? A. Yes, sir; he said he would give me a bond and mortgage on the land, and I told him I would take his note, if his wife would indorse it. Q. And they did so, and the note was afterwards paid? A. Yes, sir.

" 'A. L. Burkhalter, sworn: Q. Was there any announcement made by anybody that day, and if so what was it, and by whom made? A. When the property was read out, Mr. Aldrich stepped down to the stand and, if I am not mistaken, Mr. Aldrich said: "That he hoped that none of us would bid against Mr. Johnson, as he was going to bid to the amount of the judgment for the children." '

" 'Judge Aldrich sworn: I don't remember personally of the statement, if any, I made at the sale in reference to Mr. Johnson's buying in the property, or bidding it in for the interest of the children.'

"From this testimony the conclusion cannot be resisted that the bidding was chilled, competition was shut out, and the purchaser was thereby enabled to acquire a deed to the property for much less than its real value, and the sale is, therefore, void. *Lamar* v. *Wright*, 31 S. C., 60. Also, the more recent case of *Herndon* v. *Gibson*, 38 S. C., 357, in which the authorities in this State are cited upon the point. In the case just cited, it appeared that at the sale the defendant, Mrs. Gibson, publicly announced, 'that it was her intention to bid at such sale; that she was a widow dependent upon such premises for support, and requested that no one would bid against her.' The Circuit Court held that in this statement there was nothing said by Mrs. Gibson to impeach the title of the property, or the validity of the sale, or the value of the property in any way. On appeal, the Supreme Court reversed this holding, and in passing upon the same stated: 'That it is a principle ingrafted upon our laws that at public sales fair competition must exist, is too

long and firmly settled by our decisions to need comment.'

"The only remaining question is, are the plaintiffs barred by the statute of limitations from attacking this sale on the ground of fraud? In *Suber* v. *Chandler,* 18 S. C., 526, it was settled that the statute runs from the discovery of the fraud. That case has been cited and reaffirmed in the case of *McGee* v. *Jones,* 34 S. C., 152."

We will next consider the remainder of the exception, in which it is contended "that the sale being a public sale at public auction, all declarations and transactions which took place there were presumed to be known to all parties interested, and that the statute of limitations began to run against the sale from the date of sale." There is no express provision of law requiring those who do not attend a judicial sale to take notice of facts rendering the sale irregular, null and void. On the contrary, such persons had the right to presume that the sale would be made in a regular manner and in accordance with law, rather than in such a mode as to necessitate its being set aside for acts rendering it null and void as against the policy of the law. All presumptions are in favor of the regularity of judicial sales. In order to rebut this presumption upon which the absent parties had the right to rely, it was incumbent on those interested in sustaining the sale, to show that those seeking to set it aside for fraud as against public policy had knowledge of such facts which, if pursued with due diligence by an ordinarily prudent man, would have led to knowledge of the fraud. The Circuit Judge in his decree thus shows what knowledge the plaintiffs had of the announcement made at the sale: to wit:

"The issue is then narrowed down to the inquiry, did these plaintiffs have notice of the facts constituting the fraud for such a time as would bar them from maintaining this action? And to determine this question we must again resort to the testimony.

" 'W. W. Toole, sworn: Q. Mr. Toole, when the first time you ever learned or heard anything about this an-

nouncement being made at the sale, being stated that it was bid in for the children? A. That was about, as well as I can remember, I was about 26 or 27 years old before I knew anything about the sale of the estate. I was not told anything about it. Q. How long before the death of Mr. Johnson? A. About three or four years, as well as I remember.'

" 'J. G. Toole, one of plaintiffs, sworn: Q. How did you get your information, Mr. Toole, about this announcement at this sale? A. Uncle Lawton Burkhalter give me the information I got. Q. When was that? A. In 1897. Q. Just state whether before that time, if you know anything of what happened? A. No, sir; I don't know a thing about it.'

" 'A. L. Burkhalter, sworn: Q. Did you ever tell Mr. J. G. Toole the manner in which that sale was made at any time? A. Well, I met J. G. Toole, when Angus Heath rented the Bob Chafee place, year before last, 1897. Q. Did you say anything to him about the sale at that time? A. Yes, sir. Q. What did you tell him? A. I told him I was present at the sale, and I said Judge Aldrich can tell you. Q. What did you tell him? A. When the property was offered for sale, Mr. Aldrich said that he hoped we would not oppose Mr. Johnson, as he was going to buy it for the children, and would bid to the amount of the judgment.'

"From the foregoing testimony my conclusion is, that the plaintiffs did not discover the facts constituting the alleged fraud a sufficient length of time before the commencement of this action to bar them from prosecuting the same, the plea of the statute of limitations is, therefore, overruled." This conclusion is sustained by the testimony.

The fourth exception is as follows: "4th. It is respectfully submitted that his Honor, Judge Gary, erred in applying to the plea of the statute of limitations in this case, the exception that the statute only began to run from the discovery of the fraud, for the reason that said exception in the law applies only to secret frauds and not

to a transaction which was made public at a public sale, and he should have so held." Subdivision 6 of section 112 of the Code, providing what actions may be brought within six years, is as follows : "Any action for relief on the ground of fraud, in cases which, heretofore, were solely cognizable by the Court of Chancery, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party, of the facts constituting the fraud." There is nothing in this provision limiting its application to secret frauds. The cause of action is not to be deemed to have accrued in any case of fraud until the aggrieved party either has knowledge of the fraud, or of such information which, if pursued with due diligence by a man of ordinary prudence, would lead to knowledge of the fraud.

The fifth exception is as follows : "5th. It is respectfully submitted that his Honor, Judge Gary, erred in not sustaining the sale, and in not sustaining the plea of the bar of the statute as complete against the plaintiffs in this action, because the facts of the case show that though they were minors for a long time after the sale, they had knowledge of the facts sufficient to put them upon inquiry which, if followed up, would have given them full knowledge of facts at the sale; and that being the case, though they were minors, the statute began to run against them, and it was barred before the commencement of this action." This exception is disposed of by what was said in considering the other exceptions.

It is the judgment of this Court, that the judgment of the Circut Court be modified, by striking E. G. Toole from the record as a party plaintiff, and that in all other respects the judgment of the Circuit Court be affirmed.