## SCHROEDER *v.* YOUNG.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 458. Submitted January 9, 1896. — Decided March 2, 1896.

While mere inadequacy of price has rarely been held sufficient in itself to justify setting aside a judicial sale of property, courts are not slow to seize upon other circumstances impeaching the fairness of the transaction, as a cause for vacating it, especially if the inadequacy be so gross as to shock the conscience.

If the sale has been attended by any irregularity, as if several lots have been sold in bulk where they should have been sold separately, or sold in such manner that their full value could not be realized; if bidders have been kept away; if any undue advantage has been taken to the prejudice of the owner of the property, or he has been lulled into a false security; or, if the sale has been collusively, or in any other manner, conducted for the benefit of the purchaser, and the property has been sold at a greatly inadequate price, the sale may be set aside, and the owner permitted to redeem.

There are other facts in this case, stated in the opinion, in addition to the grossly inadequate price realized for the property, that afford ample justification for the action of the court below in permitting the plaintiff to redeem upon equitable terms, and ordering a reconveyance of the property.

*Quære*, whether issue of an alias for the original amount of the judgment, after the return of a prior execution, satisfied to the amount of nearly one half of such judgment, the sale of property thereunder to an amount more than sufficient to satisfy the amount actually due, and payment of the excess to plaintiff's attorneys will not invalidate the entire proceedings?

Whether the levy upon the interest of a co-tenant in a specific part, designated by metes and bounds, of a certain larger quantity of land is valid, is not decided.

Before the time had expired to redeem from the execution sale, the plaintiff was told by the defendant that he would not be pushed, that the statutory time to redeem would not be insisted upon, and, believing it, acted and relied upon such assurance. *Held*, that under such circumstances the purchaser was estopped to insist upon the statutory period, notwithstanding the assurances were not in writing and were made without consideration; and that there was a concurrent jurisdiction of a court of equity, founded upon its general right to relieve from the consequences of fraud, accident or mistake, which might be exercised, notwithstanding the statutory period for redemption has expired.

THIS was a complaint in the nature of a bill in equity, originally filed in the Third Judicial District Court of the

Territory of Utah, by John M. Young against Frank E. Stephens and wife and Albert T. Schroeder and wife, as defendants, to set aside and cancel certain execution sales of real property in Salt Lake City as fraudulent and void, and for permission to redeem from such sales, notwithstanding the expiration of the statutory time for redemption, and for a decree compelling the defendants to convey to the plaintiff the property mentioned, upon just and equitable terms.

The material facts in the case were that, on March 6, 1891, Clark, Eldredge & Co., a corporation, obtained judgment by default in said court against the appellee John M. Young, Henry Goddard, and George Goddard in the sum of $1673.36, with $30.60 costs.   Frank B. Stephens and Albert T. Schroeder, partners and the principal defendants, were the attorneys for Clark, Eldredge & Co. in such action.   The plaintiff John M. Young was the owner of the undivided one half of two parcels of land in Salt Lake City, and plaintiff's sister, Lydia Y. Merrill, was the owner of the other undivided one half of the said parcels.   Their title was derived from the will of their father, and, as to the greater part of such property, was subject to a right in Sarah Milton Young and Ann Olive Young to receive each one fourth of the money arising from said property during their respective lives.

On April 29, 1881, an execution was issued in said action of Clark, Eldredge & Co. against John M. Young, directing the marshal of the United States, if sufficient personal property could not be found to satisfy the judgment, to levy upon the real estate belonging to Young and his co-defendants in such action ; and on May 7, 1891, the marshal gave notice that he attached and levied on all the right, title, claim, and interest of the said John M. Young and his co-defendants in and to that parcel of land described as beginning 101 feet north, and $39\frac{1}{2}$ feet east of the S.W. corner of lot 2, block 70, plat "A," Salt Lake City survey, and running thence east $15\frac{1}{2}$ feet, thence north 28 feet, thence west $15\frac{1}{2}$ feet, thence south 28 feet to the place of beginning ; and also on that part of the same lot described as beginning $32\frac{1}{2}$ feet west from the S.E. corner of the said lot, running thence west 38 feet, thence north $98\frac{1}{3}$

feet, thence east 38 feet, thence south 98⅓ feet to the place of beginning; and also on a part of lot 12, block 8, five acre plat "A," Big Field survey.

Afterwards, on July 25, 1891, the marshal certified that he had sold the property described in the notice to John Clark, and, deducting his commissions and expenses of sale, paid the balance realized upon said sale, viz., $962.36, to the attorneys of Clark, Eldredge & Co., and further returned that there was still due and unpaid on said judgment the sum of $886.90. The John Clark mentioned in the return was a director and the principal stockholder of Clark, Eldredge & Co. Afterwards, on July 28, an alias execution issued from the said court in such action for the full sum of $1673.36, and $30.50 costs, by virtue of which the marshal levied upon a certain other parcel of the same lot described as beginning 64½ feet west of the N.E. corner of said lot 2, running thence west 45½ feet, thence south 20 rods, thence east 78½ feet, thence north 90¾ feet, thence east 31¼ feet, thence north 41¼ feet, thence west 16½ feet, thence north 148½ feet, thence west 48 feet, thence north 49½ feet to the place of beginning; and on August 25 the marshal returned that he had sold these premises to the defendants Stephens and Schroeder for the sum of $828.70, and further certified that the judgment obtained by said corporation was still unsatisfied to the extent of $100.

On September 30, said marshal made a further return to the last mentioned writ, in which he certified that he sold all of lot 12, block 8, five acre plat "A," Big Field survey, situate in Salt Lake County, and also a certain parcel of land described as beginning 39 feet east and 81 feet north of the S.W. corner of said lot 2, running thence north 209 feet, thence east 16½ feet, thence south 209 feet, thence west 16½ feet to the place of beginning, to Stephens and Schroeder for the sum of $136, and that, deducting the costs and expenses of said last levy, amounting to $30, paid the balance, $106, to the attorneys of Clark, Eldredge & Co., and returned said writ fully satisfied.

The court found that all that part of lot 2 as described in

this statement, a plat of which appeared in the record, constituted a single parcel of land, and should have been regarded and treated as such, and not as being divided into separate lots or parcels, and that the first parcel sold being 15½ by 28 feet had no ingress or egress, and that the same as sold would necessarily be sacrificed on such sale on account of its location, but that at the time of the sale of this parcel, neither Stephens nor Schroeder had actual knowledge of any other realty owned by plaintiff.

The other material facts are stated in the opinion of the court.

Before the case was called for argument, the suit was settled so far as the defendants Stephens and his wife were concerned, leaving Schroeder and his wife sole defendants. The case coming on to be heard upon pleadings and proofs, the District Court made a decree permitting the plaintiff Young to redeem the property upon paying to the defendants the sum of $723.25, less certain costs, but subject to one half of a mortgage executed by the defendants, who were ordered to execute and deliver to plaintiff a deed of the property. From this decree an appeal was taken to the Supreme Court of the Territory, which affirmed the decree of the District Court, whereupon appellants prayed and were allowed an appeal to this court.

*Mr. A. T. Schroeder* and *Mr. James B. Edmonds* for appellants.

*Mr. Parley L. Williams* for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

Plaintiff relies mainly for a decree in this case upon the fact that his interest in the property in question, which the trial court found to be worth $26,000, was sacrificed at these several judicial sales to pay a judgment of little more than $1700.

While mere inadequacy of price has rarely been held suffi-

cient in itself to justify setting aside a judicial sale of property, courts are not slow to seize upon other circumstances impeaching the fairness of the transaction, as a cause for vacating it, especially if the inadequacy be so gross as to shock the conscience. If the sale has been attended by any irregularity, as if several lots have been sold in bulk where they should have been sold separately, or sold in such manner that their full value could not be realized; if bidders have been kept away; if any undue advantage has been taken to the prejudice of the owner of the property, or he has been lulled into a false security; or, if the sale has been collusively, or in any other manner, conducted for the benefit of the purchaser, and the property has been sold at a greatly inadequate price, the sale may be set aside, and the owner permitted to redeem.

Thus, in *Byers* v. *Surget*, 19 How. 303, 306, lands to the amount of 14,000 acres, and estimated at from $40,000 to $70,000 in value, were sold by the sheriff in satisfaction of a judgment for costs of $39, to the attorney for the successful party, and conveyed to him for $9.31½. The sale was pronounced to have been fraudulent and void, and a reconveyance of the property was decreed. It appeared that the owner of the property had no knowledge of the suit until he was informed of the sale of the land; that the attorney for the successful party, the defendant, assumed himself the power to tax the costs, the right of selecting the final process, of prescribing the description and quantity of the property which he chose to have seized in satisfaction, of directing the sheriff as to the various steps to be taken by him, and of becoming the purchaser himself for the petty sum of $9.31½. Of this proceeding, Mr. Justice Daniel, in delivering the opinion of the court, remarks: "Such is the history of a transaction which the appellant asks of this court to sanction, and it seems pertinent here to inquire under what system of civil polity, under what code of law or ethics, a transaction like that disclosed by the record in this case can be excused, or even palliated."

In *Graffam* v. *Burgess*, 117 U. S. 180, 186, two judgment

creditors became the purchasers for about $150 of unincumbered property worth at least $10,000, although the judgment debtor had $3000 worth of furniture and personal property in the house subject to levy. During the temporary absence of the complainant, the defendants entered upon the premises, broke into the house and took possession of it on behalf of the purchasers, removed the furniture and other personal property, including the wearing apparel of the complainant, took possession of her personal correspondence and papers and the sum of $170 in money, and still retained possession of the property at the time of the filing of the bill. The court found that the complainant was ignorant of the issue of the execution or of the sale of the property, that the purchasers knew that she was unconscious of it, and endeavoured to keep her so, and took an inequitable advantage of her ignorance to get possession of it. In reply to the argument that the proceedings were regular, Mr. Justice Bradley observed: "It is insisted that the proceedings were all conducted according to the forms of law. Very likely. Some of the most atrocious frauds are committed in that way. Indeed, the greater the fraud intended, the more particular the parties to it often are to proceed according to the strictest forms of law." The court commented most severely upon the conduct of the purchasers, and found no difficulty in setting aside the sale, although four members of the court dissented upon the ground that the complainant had failed in her duty to redeem from the sale within the time limited by law.

In *Howell* v. *Baker*, 4 Johns. Ch. 118, a farm worth $2000 was sold under a judgment and execution, on which not more than $80 were due, to the attorney of the plaintiff, who attended the sheriff's sale, for $10. The sale was held upon a stormy day, when no person but the attorney and the deputy sheriff were present, and it was held that these facts, connected with the gross inadequacy of price, were sufficient to authorize the purchaser to be held as trustee for the respective interests of the parties to the execution, and the bidder was allowed to redeem on equitable terms. A large number of other cases are also cited by Mr. Justice Bradley in his

opinion in *Graffam* v. *Burgess*, and the general proposition laid down, as above stated, that if, in addition to inadequacy of price there be other circumstances throwing a shadow upon the fairness of the transaction, the judgment debtor will be allowed to redeem.

There are other facts in this case than the grossly inadequate price realized for this property, that afford ample justification for the action of the court below in permitting the plaintiff to redeem upon equitable terms, and ordering a reconveyance of the property.

1. The property was sold to Stephens and Schroeder, who had acted as attorneys for the judgment creditor throughout the entire transaction, and had been fully paid by the corporation for their services. In this connection the trial court further found that Stephens furnished the officer a description of the property to be levied upon and sold, and that he accordingly did levy upon and sell as he was directed by Stephens according to such description. Add to this the further finding that at neither of the sales was there any other bidder and no other person present than Stephens and the officer conducting the sales, and we can readily appreciate how inevitable it was that the property should be sacrificed. Although there is no general rule that an attorney may not purchase at an execution sale, provided it be not done to the prejudice of his own clients, *Pacific Railroad* v. *Ketchum*, 101 U. S. 289, 300, such purchase in itself is calculated to throw a doubt upon the fairness of the sale, and as is quaintly said of such sales by the Court of Appeals of Kentucky in *Howell* v. *McCreery*, 7 Dana, 388 : " Public policy and the analogies of law require that they should be considered *per se* as in the twilight between legal fraud and fairness, and should be deemed fraudulent, or in trust for the debtor, upon slight additional facts." See also *Hall* v. *Hallet*, 1 Cox, 134 ; *Jones* v. *Martin*, 26 Texas, 57 ; *Byers* v. *Surget*, 19 How. 303 ; *Blight's Heirs* v. *Tobin*, 7 T. B. Mon. 612.

2. The alias execution of July 28 was not only issued for the full amount of the original judgment, $1673.36 and $30.50 costs, without deducting $962.36, realized upon the first exe-

cution, but under it the marshal sold, under the directions of Stephens and Schroeder, property for an amount in excess of the amount remaining unpaid on the judgment, and collected the excess and paid it over to Stephens and Schroeder, who retained it. In this connection the trial court made the following finding: "At the time of the last sale, to wit, September 30, 1891, there was a balance due Clark, Eldredge & Co. of only $25.57, and their judgment had been satisfied except said sum, and to satisfy said balance property was sold as aforesaid, amounting in all to $136, $106 of which was paid by the United States marshal to said Stephens and Schroeder." Upon no theory were the judgment creditors entitled to any more than the amount of their claim, and if, as may sometimes happen, the property be sold for more than the amount of the execution, the residue should be returned to the judgment debtor.

There is reason for saying that the issue of an alias execution for the original amount of the judgment, after the return of a prior execution, satisfied to the amount of nearly one half of such judgment, the sale of property thereunder to an amount more than sufficient to satisfy the amount actually due, and the payment of the excess to the plaintiff's attorneys, invalidate the entire proceedings — the rule in some States being that a levy for an amount exceeding the amount of the judgment or the amount actually due upon the judgment with interest and costs is void. 2 Freeman on Executions, § 381; *Glidden* v. *Chase*, 35 Maine, 90; *Pickett* v. *Breckinridge*, 22 Pick. 297; *Peck* v. *Tiffany*, 2 N. Y. 451; *Hastings* v. *Johnson*, 1 Nevada, 613; *Patterson* v. *Carneal*, 3 A. K. Marsh. 618. But, however this may be, there can be no doubt that this alias execution and the proceedings thereunder were irregular so far as Stephens and Schroeder were concerned, though perhaps not to the extent of invalidating the title of a *bona fide* purchaser. *Stead's Executors* v. *Course*, 4 Cranch, 403; *French* v. *Edwards*, 13 Wall. 506; *Groff* v. *Jones*, 6 Wend. 522; *Tiernan* v. *Wilson*, 6 Johns. Ch. 411.

3. The court below was also of opinion that the property of the debtor was sacrificed by the manner in which the sales

were made, and particularly by the successive sales of his interest in different parts of lot 2, block 70, held in common with his sister, Lydia Y. Merrill, and that a proper regard for his interests required that his entire right to the whole land thus held in common should have been sold at one time. This, however, raises a question as to which the authorities are not entirely in harmony, viz., whether the levy upon the interest of a co-tenant in a specific part, designated by metes and bounds, of a certain larger quantity of land is valid. In view of the other manifest irregularities, we do not feel called upon to express an opinion upon this point.

There is one finding, however, in respect to these sales, which, taken in connection with the facts that the defendants were the attorneys for the judgment creditors, furnished the officer selling the property with the description of the property to be levied upon and sold, and became the purchasers of the property either directly from the marshal, or indirectly through their client Clark, which is in itself sufficient to justify the action of the court below in vacating the sales and permitting the plaintiff to redeem, viz., that "before any of said property was sold, said Stephens, who was the sole bidder at each of said sales, formed the intention that, regardless of the value of the various pieces of property to be sold, and that were sold, he would leave a balance after each sale, so that all of the plaintiff's property would be sold, and he so bid at the various sales as to accomplish, and did accomplish, said object and purpose." As Stephens was appellant's partner in the practice of law, and in the prosecution of the claim of Clark, Eldredge & Co., and bought the property in for himself and partner, who now sets up title in himself by virtue of such purchase, it is clear that he is bound by Stephens' acts and representations. Certainly he cannot set up a title acquired by Stephens' assistance, and at the same time repudiate his acts in connection with the acquisition of such title.

There are other circumstances, also, found by the court below, which, taken in connection with the grossly inadequate price paid, render it still more inequitable that purchasers standing in the position of the defendants in this case.

should insist upon the letter of the bargain, and throw something more than a mere doubt upon the fairness of the transaction.   Before the time had expired for redemption Stephens and Schroeder requested the collector of taxes of that county to allow them to bring suit against the plaintiff to recover the taxes owing by him for the year 1890, on the part of lot 2 described in the complaint, and agreed that, if the collector so consented, they would bring the suit, and make the collection free of cost to the collector, an arrangement which was carried out according to its terms. · On April 10, 1892, plaintiff offered to pay defendants the full amount of the judgment obtained by them, together with interest at the rate of one per cent per month; and also to liberally compensate them for all their services and trouble, give them $1000 besides as a bonus, and pay all their advances with interest if they would reconvey to him, which the defendants refused to do.   Of a similar offer and refusal this court in 19 How. 310, 311, speaking through Mr. Justice Daniel, said: "Another pregnant proof of the design of the appellant to grasp and retain what no principle of liberality or equity could warrant, is the fact, clearly established, of his refusal after the sale to accept from the appellee, for the redemption of his lands so glaringly sacrificed, a sum of money considerably exceeding in amount the judgment for costs, with all the expenses incidental to the carrying that judgment into effect.   The appellant, by his irregular and unconscientious contrivances, achieved what he conceived to be an immense speculation, and he determined to avail himself of it, regardless of its injustice and ruinous consequences to the appellee."

About the same time, the plaintiff, being ignorant of the fact that lot 12 had been sold and that the defendants had a deed therefor, informed the defendant Schroeder that he intended to redeem the lot from a sale that had been made for the taxes of 1891, and afterwards did so redeem said lot, and informed Schroeder that it had been done, the plaintiff being still ignorant that the defendants held a marshal's deed for it.   Again, on April 24, plaintiff being still ignorant that defendants held a marshal's deed for lot 12, informed Schroe-

der that he intended to redeem said lot from a tax sale that had been made thereof for the taxes of 1890, and did subsequently redeem the same, and informed Schroeder of the fact, and that Schroeder never at any time informed him that he had obtained a deed for the lot. The court further found that defendants purposely and intentionally failed to inform the plaintiff that they had a title to the said lot at the time the plaintiff was redeeming the same from the tax sales. The court further found that the said attorneys, in violation of their duty to obtain the highest possible price for the property while acting in behalf of their clients, became the bidders upon said property, and so acted as to obtain the same for the least possible sum, so as to satisfy the judgment, and at the same time to sell all the property belonging to said Young. If these facts be not sufficient to justify a rescission of these sales, it is difficult to imagine what would be so considered.

4. Defendant relies mainly upon the fact that the statutory period of redemption was allowed to expire before this bill was filed, but the court below found in this connection that before the time had expired to redeem the property, the plaintiff was told by the defendant Stephens that he would not be pushed, that the statutory time to redeem would not be insisted upon, and that the plaintiff believed and relied upon such assurance. Under such circumstances the courts have held with great unanimity that the purchaser is estopped to insist upon the statutory period, notwithstanding the assurances were not in writing and were made without consideration, upon the ground that the debtor was lulled into a false security. *Guinn* v. *Locke*, 1 Head, 110; *Combs* v. *Little*, 4 N. J. Eq. 310; *Griffin* v. *Coffey*, 9 B. Mon. 452; *Martin* v. *Martin*, 16 B. Mon. 8; *Butt* v. *Butt*, 91 Indiana, 305; *Turner* v. *King*, 2 Ired. Eq. 132; *Lucas* v. *Nichols*, 66 Illinois, 41; *McMakin* v. *Schenck*, 98 Indiana, 264. In *Southard* v. *Pope's Ex'rs*, 9 B. Mon. 261, 264, it is said that "a refusal by the purchaser to accept the money and permit the redemption to be made within the time agreed would be a fraud upon the defendant in execution, and authorize an application by him to a court of equity for relief."

Probably, if a motion had been made in the original case to set aside the sale upon the ground of mere irregularities, such motion would have to be made before the statutory period for redemption had passed; but in this class of cases, where fraudulent conduct is imputed to the parties conducting the sale, there is a concurrent jurisdiction of a court of equity, founded upon its general right to relieve from the consequences of fraud, accident or mistake, which may be exercised, notwithstanding the statutory period for redemption has expired. It is evident that, where a sale has culminated in the execution and delivery of a deed to the purchaser, which is not void upon its face, or a mortgage has been put upon the property, as in this case, no remedy is complete, which does not go to the cancellation of such deed, and the complete reinvestment of the title in the plaintiff. It also appears from the findings that appellant has received rents from the property, that various sums had been expended for taxes and other purposes, that an accounting was necessary in adjusting the rights of the parties, which could not be effectually carried on in a court of law. There can be no doubt of the jurisdiction of a court of equity in such case notwithstanding the expiration of the statutory time of redemption. *Graffam* v. *Burgess,* 117 U. S. 180; *Blight's Heirs* v. *Tobin,* 7 T. B. Mon. 612; *Day* v. *Graham,* 1 Gilman, (6 Ill.) 435; *Morris* v. *Robey,* 73 Illinois, 462; *Fergus* v. *Woodworth,* 44 Illinois, 374; *Bullen* v. *Dawson,* 139 Illinois, 633; *Jenkins* v. *Merriweather,* 109 Illinois, 647; *State Bank* v. *Noland,* 13 Arkansas, 299.

The appellant's brief deals largely with criticisms upon the findings and upon the admission of testimony, which we do not feel it necessary to discuss, as they do not involve the merits of the case, which rest upon the undisputed facts. It would be a reproach to a court of equity, if it could not lay hold of such a transaction as this is shown to be, and set aside a sale of property acquired under the forms of law and in defiance of natural justice.

The decree of the court below is, therefore,

*Affirmed.*