Argued at Pendleton May 2, affirmed July 18, 1922.

# GEANAKAPULAS *v.* ZOGRAPHOS.

(208 Pac. 585.)

**Execution—Inadequacy of Purchase Price at Execution Sale Considered on Question of Good Faith.**

1.  The inadequacy of price paid by a purchaser at an execution sale will be considered on the question of the good faith of the purchaser.

**Execution—Quieting Title—Sheriff's Deed to Purchaser at Execution Sale, Where Purchaser had Notice Judgment was Paid Void.**

2.  A purchaser at execution sale under judgment which had been paid, of which facts he had notice, obtained no title, and a sheriff's deed of the land to purchaser constituted a cloud on owner's title, and should be set aside.

**Execution—Owner of Land Held not Estopped to Claim Execution Sale Void.**

3.  Where, in an action to set aside a sheriff's deed as a cloud on plaintiff's title, on the ground that judgment on which execution was issued had been paid, and there was no showing that plaintiff by any act intended that defendant should act on his conduct or representations, plaintiff, although not present at execution sale, was not estopped to claim that it was void.

**Attorney and Client—Attorney has Authority to Receive Payment of Judgment for Client.**

4.  An attorney may receive payment in satisfaction of a judgment in favor of his client.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

This is a suit to set aside a sheriff's sale of real estate on execution, and cancel the sheriff's deed as a cloud upon the plaintiff's title, on the ground that the judgment upon which the execution was issued had been paid. Plaintiff and defendant and several of the witnesses are natives of Greece, having been boys together in the same village. Plaintiff and his cousin, Vichas, were conducting a hotel at Reith, a small village about six miles from Pendleton, and became indebted to Alexander's, a corporation at Pen-

dleton. On October 31, 1918, Alexander's instituted
an action on the account against plaintiff only.
Douglas W. Bailey was attorney for plaintiff in that
action. Judgment was entered by default on Novem-
ber 13, 1918, for a total including costs of $230.39.
On November 13, 1918, Vichas, having purchased
plaintiff's interest in the hotel and assumed the
debts including Alexanders, went with plaintiff to
Mr. Bailey's office and requested to pay the judgment
in installments, and they gave their note for $64.50
in settlement of attorney's fees and costs. No defi-
nite time was fixed for the payments. Thereafter
payments were made by Mrs. Vichas with the excep-
tion of one payment, Vichas himself being in the
army a portion of the time, as follows:

| | |
|---|---:|
| November 14, 1918, note above mentioned | $ 64.50 |
| January 21, 1919 | 20.00 |
| January 27, 1919 | 50.00 |
| February 17, 1919 | 25.00 |
| March 15, 1919 | 25.00 |
| April 18, 1919 | 25.00 |
| June 17, 1919, paid by Vichas | 30.00 |
| July 10, 1919 | 40.00 |
| Total | $279.50 |

An attachment of real property was made at the
time the action was instituted, and the judgment or-
dered that the attached property be sold. An execu-
tion was issued on January 20, 1919. The execution
was returned "unsatisfied by order of plaintiff's at-
torney," on July 24, 1919. On June 7, 1919, another
execution was issued, and the property advertised for
sale on July 14, 1919. On that date the sale was

postponed until July 24, 1919, for the reason, as stated in the return, "no bidders being present," although defendant and his attorney were present ready to bid at that time. Mr. Bailey died suddenly in his office on July 18, 1919.

On July 24, 1919, Mr. Cooley, the manager of Alexander's, was called to the courthouse by the sheriff's office to attend the sale. Not knowing anything about the circumstances Mr. Cooley called upon J. Roy Raley, an attorney, who immediately went to the courthouse. As to what took place there is some difference in the memory of the attorneys. Mr. Raley states that he suggested the sale be postponed, but the defendant stated that he had appeared once before and was now prepared to bid. Mr. Cooley produced a statement which he had prepared from Alexander's books showing that the store had received from Mr. Bailey $120 on the judgment leaving a balance due of $97. Mr. Raley then stated that as long as all there understood the situation there was no objection to selling the property and bidding it in for what Mr. Cooley's books showed as unpaid, and the amount paid Bailey could be adjusted later. The property was then sold to defendant for $134.39. Mrs. Vichas testified that prior to the time of the sale she had claimed to Alexander's that she had paid Mr. Bailey the entire judgment. The land at that time was estimated to be worth from $20,000 to $25,000. It was encumbered for about the sum of $15,000. The plaintiff was not present at the sale, and was not aware of the situation until after the sheriff's deed was issued October 27, 1920, the sale having been confirmed October 25, 1919.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Winter & Maguire* and *Mr. J. T. Hinkle,* with oral arguments by *Mr. Robert F. Maguire* and *Mr. Hinkle.*

For respondent there was a brief over the name of *Messrs. Raley, Raley & Steiwer,* with an oral argument by *Mr. Frederick Steiwer.*

BEAN, J.—The trial court found that the $40 paid on the judgment, July 10, 1919, was paid and accepted as full payment of the judgment; that at the time of the execution sale on July 24, 1919, the judgment had been fully satisfied; that plaintiff had been informed that the judgment was paid in full and thought the record had been cleared, and did not learn of the sale until after the recording of the sheriff's deed to defendant; that the defendant had notice that the judgment had been paid, and knowledge of facts sufficient to put him on inquiry concerning the judgment at the time of the sale; that the value of the premises sold was from $20,000 to $25,000, upon which there were certain encumbrances as follows:

"A mortgage of $9,000 upon all of the real estate owned by the partnership of Geanakapulas and Gunis, of which property plaintiff Geanakapulas owned two-thirds and Gunis owned one-third. A mortgage of $4,600, against the undivided two-third interest of the plaintiff; a mortgage of $1,250, against certain town lots included in the property above described; that in addition to these encumbrances there was an acknowledged indebtedness of plaintiff to the partnership in a sum from $1,400 to $1,600; that there was ample personal property belonging to the partnership to discharge this indebtedness; that the exact value of plaintiff's equity in the

property sold under the execution is not shown by the testimony, but that the value thereof, considering all the circumstances of the case, was several thousand dollars, and that the amount paid by defendant at the execution sale was inadequate and the defendant was not a purchaser in good faith and for a valuable consideration in that the amount paid, viz.: $134.39, was not a fair valuable consideration for the property purchased.''

There was testimony to support the findings. There being some conflict, the findings of the circuit judge who saw and heard the witnesses upon the stand are entitled to great weight. The attorneys who attended the sale differ in memory as to what took place there. The defendant testified that at the time of the sale Mr. Raley had a statement of the amount due on the judgment which he understood to be ''the book from Mr. Bailey's account,'' but which appears to be from Alexander's books. The defendant's testimony indicates that there was some discussion over Mr. Bailey's book, and that reliance was not placed solely on the record of the judgment. Mr. Bailey's account-book shows all of the payments. We agree with the findings of the trial court.

1. It is stated in 5 R. C. L., page 659, Section 30:

''As a sale under a judgment in fact paid, though not satisfied of record, is void, and conveys no title, even though the purchaser has no knowledge that the judgment has been paid, it is held that the effect of an execution sale under a paid judgment is to cast a cloud on the title, and the remedy is by action to remove such cloud.''

The rule is stated in Herman on Executions, Section 255:

''An officer making the sale of property under the process of a court, acts under a naked statutory power, and if no power exists, no title passes to the

purchaser. A purchaser under a power is bound to see that it exists. He who buys under a power buys at his peril, and acquires no title unless he can show a valid subsisting power. The mere fact that the purchaser pays a valuable consideration does not help him any more than it would if he purchased from a stranger to the title. The officer who sells under a judgment and execution exercises a statutory power by virtue of which alone his deed can operate upon the title to the land sold. When the judgment is satisfied the power to sell is gone. The debt being paid, the power to sell under the execution ceases, and as the process will not protect the officer, so no title can pass to the purchaser of property under it. The sheriff, in making sale of property under process of the court, acts under a power, and if the power does not exist no title passes, even to an innocent purchaser.''

In *Hoxter* v. *Poppleton,* 9 Or. 481, at page 484, Mr. Chief Justice LORD, speaking of a purchaser at an execution sale, said:

''He buys at his peril, because the law requires him to ascertain whether the officer has a valid writ issued upon a valid and subsisting judgment, and if these do not exist, the officer is without power to sell, and as a consequence, the purchaser can acquire no title to the property sold. (Herman on Executions, § 255, and authorities cited in the note.)''

Mr. Freeman observes that,

''so large a number of cases may be cited to show that even an innocent purchaser at an execution sale must lose his title by parol proof of the prior satisfaction of the judgment that we must look to the legislature rather than to the judiciary for means of escape from the hardship of this rule.'' 1 Freeman on Executions (3 ed.), § 19.

The inadequacy of price paid by a purchaser at such a sale will be considered upon the question of

the good faith of the purchaser: *Shepperd* v. *Holmes,* 89 Or. 626 (174 Pac. 530); *Barnes* v. *Spencer,* 79 Or. 205, 214 (153 Pac. 47); *Coates* v. *Smith,* 81 Or. 556 (160 Pac. 517).

2. In the present case the defendant was a purchaser at an execution sale under a judgment which had in fact been paid, of which fact the defendant had notice, though the judgment was not satisfied of record. Under these circumstances there can be no question that the defendant obtained no title to the land of plaintiff, and that the sheriff's deed of the land issued to defendant is a cloud upon plaintiff's title and should be set aside: 1 Freeman on Executions (3 ed.), § 19, p. 54; *Shepperd* v. *Holmes,* 89 Or. 626, 628 (174 Pac. 530); *Schroeder* v. *Young,* 161 U. S. 334 (40 L. Ed. 721, 16 Sup. Ct. Rep. 512, see, also, Rose's U. S. Notes).

3. The plaintiff was not present at the sale. He thought it was sufficient to see that his former partner paid the judgment. There is no showing in the case that the defendant was induced to purchase the land by any act of plaintiff, or that plaintiff intended that defendant should act upon his conduct or representations. Plaintiff is not estopped to claim that the sale is void: Ewart on Estoppel, p. 26; *Patterson* v. *Chambers Power Co.,* 81 Or. 328 (159 Pac. 568).

4. It is urged by defendant that Mr. Bailey, attorney for Alexander's, had no authority to satisfy the judgment of *Alexander's* v. *Geanakapulas,* except for payment in cash. It will be noticed that the judgment was for an account, and did not require defendant Geanakapulas to pay any attorney fee except the statutory fee. By allowing the payment in installments and requiring a note of $64.50 for costs and attorney's fee, it relieved Alexander's from such

payment of attorney's fee. Bailey had a right to accept a note for his fee and for expenses which he had advanced. Except for a small difference in figures, which would not be sufficient to authorize the sale on execution of a valuable farm, the judgment was paid in cash to the attorney who was authorized to receive it. The arrangement was favorable to Alexander's, and it would doubtless have received all of its money in due time except for the sudden death of the attorney.

The decree of the Circuit Court was right, and is affirmed.                                    AFFIRMED.