13334

METROPOLITAN LIFE INSURANCE CO. v. SANSBURY *ET AL.*

(162 S. E., 579)

*Messrs. Willcox & Hardee,* for appellants,

*Messrs. Baker & Baker,* for respondents.

January 26, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

With slight variations, we adopt the statement of facts agreed to by the parties to the appeal. This action, brought in Darlington County, was an ordinary one for the foreclosure of a real estate mortgage executed by the defendant J. Baxter Sansbury. Lamont T. Sansbury, his son, as the holder of a junior mortgage, was made a party defendant; S. H. Young, as receiver of the Bank of Timmonsville,

was made a defendant as the holder of a judgment against J. Baxter Sansbury; this judgment being of later date than plaintiff's mortgage. The Sansbury defendants, father and son, answering the complaint, jointly alleged the liability of the father to the son on the second mortgage, denied the existence of a lien in favor of the defendant Young, as receiver, and asserted that the premises should not be sold until after the harvesting of the crops then growing thereon. The defendant Young, as receiver, alleged the existence of a lien on the mortgaged premises in his favor by reason of a judgment against the defendant J. Baxter Sansbury in the sum of $59,975.80. He also attacked as fraudulent the mortgage set up in favor of Lamont T. Sansbury, and asserted the right to have all of the lands of J. Baxter Sansbury sold in satisfaction of the judgment.

The matter was heard by his Honor, Judge E. C. Dennis, who made a decree of foreclosure and sale, dated September, 1930, which was consented to by the attorneys for all the defendants. The decree provided, among other things, that all issues raised in the pleadings of the Sansbury defendants be reserved for further consideration by the Court; that "the mortgaged premises be sold on the first Monday of December next or on some subsequent and convenient sales day thereafter, on the following terms, that is to say, Three Thousand ($3,000.00) Dollars cash; the balance of the purchase price shall be payable in ten equal annual installments, with interest on unpaid balances at the rate of seven per cent per annum, payable annually, secured by notes and mortgage of the purchaser, covering the property so sold. * * * No bid shall be accepted by the said Probate Judge until a cash deposit of Three Hundred ($300.00) Dollars has been made; said sum to be forfeited, if a compliance with said sale is not had within ten days from the date thereof, and if compliance is had, said sum shall be applied to the costs and plaintiff's judgment." It also provided for a resale of the premises on the next or some subsequent salesday should the purchaser fail to comply with the terms thereof, and for

the payment, out of the proceeds of the sale, of taxes, costs, etc.

Under this decree of foreclosure, the property was sold on salesday, December 1, 1930, and was struck off to Philip H. Arrowsmith, attorney, of Florence, S. C., for $14,701-.00; the required deposit of $300.00 being duly made. Nothing further was done about the matter until December 9, 1930. On that date Mr. Arrowsmith wrote the master for Darlington County the following letter:

"I am prepared to transfer my bids on the J. B. Sansbury property to Mr. Lamont T. Sansbury, he to pay in cash the amount due to the insurance companies, that is, the Metropolitan and Southeastern, on their respective mortgages and credit his mortgage with the difference to the amount of the bids and accept title.

"I am sending copy of this letter to each of the counsel interested in the case and will kindly ask that you regard this letter as the equivalent of a tender of the cash to discharge the insurance companies' mortgages and the mortgage owned by Mr. Sansbury for credit for the difference to the aggregate of the bids.

"Please advise me as soon as you are ready and I will at that time make transfer of the bids and Mr. Lamont T. Sansbury will at that time pay the cash and tender the mortgage for credit and take title."

The master never answered this letter; but, without notice to Sansbury or his attorney, readvertised the premises and resold them on salesday in February, 1931. At this second sale, the defendant Young, as receiver, was the highest and last bidder at $10,000.00. The premises were knocked down to him, and he delivered and the Judge of Probate, as master, accepted, as a compliance with the bid, a check for $300.00. He subsequently, within the ten-day period, paid to the master an additional sum of $2,700.00, and tendered and left with him notes and a mortgage of the premises in the sum of $7,000.00. However, before a deed

was actually delivered to the purchaser, a petition was filed by the defendant Lamont T. Sansbury, asking that the Probate Judge, as master, be restrained from executing and delivering any deed or doing anything looking to a compliance with the sale of the premises made by him on the first Monday in February; and that the master, the plaintiff, and the defendant S. H. Young, as receiver, be required to show cause why the said attempted sale should not be vacated and adjudged null and void, and to show cause, further, why the petitioner should not be permitted to take title under the terms of his offer of compliance as contained in his letter to the master of Darlington County of December 9, 1930. The matter was heard by his Honor, Judge C. C. Featherstone, who issued a rule directing the respondents named in the pertition to show cause before Judge Dennis why the prayer of the petition should not be granted.

Pursuant to the rule, Judge Dennis heard the matter, and by an order dated February 27, 1931, directed a resale of the property upon compliance by the petitioner, Lamont T. Sansbury, with certain conditions named therein, saying: "I do not think the Sansbury defendants have any right to have the sale of February set aside, but in view of the fact that in this sale the property may not have brought its full value I am inclined to allow a re-sale if the same is done without prejudicing the rights of the plaintiff."

Thereafter, the defendant Young, as receiver, made a motion before Judge Dennis for a revision of this order, on the ground that Young, as receiver, had acquired a vested right in the premises by his bid and his compliance therewith, of which the Court had no right to deprive him. This motion was refused in an order dated April 16, 1931, in which the Court said: "It seems to me that S. H. Young, as receiver, occupies a different status from an individual as he is an officer of the Court and subject to the control of the Court in a different way from what the Court would have over an individual."

On April 29, 1931, Judge Dennis also granted an order, in settling the case for appeal, allowing all of the amendments proposed by the defendant Lamont T. Sansbury. From all of these orders, the defendant Young, as receiver, now appeals to this Court.

The main question presented for our consideration is, may the highest bidder at a foreclosure sale, whose bid has been accepted and complied with, be denied the right to have the property conveyed to him, in the absence of any charge of fraud or unfair dealing of any kind, merely upon the ground that "the property may not have brought its full value?"

In *Ex parte Cooley,* 69 S. C., 143, 48 S. E., 92, 95, with regard to the inadequacy of the price bid, the Court had this to say:

"It is not a sufficient ground for setting aside a judicial sale that one of the parties interested intended to bid higher, but neglected to do so, or was prevented by a mistake at the time of the sale, if neither the officer making the sale nor the purchaser contributed to the mistake, and the sale was fair and regularly conducted. *Young v. Teague,* Bailey, Esq., 13.

"Where unfair means have not been employed to prevent competition at a judicial sale, mere inadequacy of price is no ground for setting it aside. *Coleman v. Bank,* 2 Strob. Eq., 285, 49 Am. Dec., 671; *Ex parte Alexander,* 35 S. C., 416, 14 S. E., 854; 17 Ency. Law (2d Ed.), 1001. If the inadequacy of price is so gross as to shock the conscience, a Court of equity would doubtless seize upon other circumstances impeaching the fairness of the transaction as a cause for vacating it. *Robinson v. Association,* 14 S. C., 148; *Schroeder v. Young,* 161 U. S., 334, 16 S. Ct., 512, 40 L. Ed., 721; 17 Ency. Law (2d Ed.), 1003. But the circumstances impeaching the fairness of the transaction should relate to the conduct of the officer making the sale, as in *Farr v. Sims,* Rich. Eq. Cas., 122, 24 Am. Dec., 396, or to the conduct of the purchaser participating in the attempt to

stifle competition or affected with notice thereof, as in *Carson v. Law,* 2 Rich. Eq., 296; *Hamilton v. Hamilton,* 2 Rich. Eq., 355, 46 Am. Dec., 58; *Barrett v. Bath Paper Co.,* 13 S. C., 158; *Herndon v. Gibson,* 38 S. C., 360, 17 S. E., 145, with annotations in 20 L. R. A., 545, 37 Am. St. Rep., 765; *Toole v. Johnson,* 61 S. C., 40, 39 S. E., 254."

In *Farrow v. Farrow,* 88 S. C., 333, 70 S. E., 459, 461, the Court, in discussing this question, had this to say:

"As to the indaequacy of price: The rule is well settled that mere inadequacy of price, unaccompanied by other circumstances which should invoke the exercise of the Court's discretion, is not sufficient, unless, perhaps, it is so great as to raise a presumption of fraud or to shock the conscience of the Court. Inadequacy of price, coupled with other circumstances tending to cause it, or with any unfairness or impropriety in the sale, may be sufficient, even though neither, standing alone, would be. But the accompanying circumstance should be such as would of itself tend to call for the exercise of the Court's discretion. Certainly the mere negligence of an intending bidder would have no such effect. *   *   *

"If the mere fact that some one can be found after a sale has been fairly made who offers more, even double what the land brought at the sale, is held to be sufficient ground to refuse confirmation, the position of a purchaser at such sales is indeed precarious."

In the case at bar, the Circuit Judge, after pointing out that the affidavit made by J. B. Sansbury set forth that neither he nor his son, L. T. Sansbury, knew that the property was to be resold, and that L. T. Sansbury was residing in Florida and J. B. Sansbury in Florence County, and that neither of them saw the advertisement for resale of the property in the paper published in Darlington County, and that the result of the second sale would be a forfeit of the $300.00 deposited by L. T. Sansbury at the first sale, and also to render him liable for a deficiency judgment in the sum of $4,701.00, made the following pertinent remarks: "It

appears to me that both Sansbury defendants and their counsel, P. H. Arrowsmith, Esq., knew that the letter of December 9, 1930, was not a compliance with the decree of foreclosure and could not be accepted by the master for Darlington County for the reason that it was not in accordance with the decree, and if the master had accepted such a bid he would have been liable for the amount credited on the Sansbury mortgage. This being so apparent there was no duty on the part of the said master to notify Mr. Arrowsmith that such an offer would not be accepted. After writing this letter neither Mr. Arrowsmith nor Mr. Sansbury took any steps to find out whether or not this offer would be accepted, and whether or not the property would be re-advertised and sold although they knew that the master could not accept the offer, and they also knew that the decree provided for a re-sale. Nothing was done by them until February 9th, 1931, when the order to show cause and temporary restraining order was signed by Judge Featherstone bringing this matter up before me for hearing on February 14th."

Under the facts of this case, it must be conceded that the officer charged with the sale of the property in question did only his duty; that which he was required to do under the order of the Court. The letter addressed to him by Mr. Arrowsmith was in no sense a compliance with the bid at the December sale, and he was under no legal duty to answer it, and his failure to do so would constitute no ground for setting aside the February sale. There is no intimation that Mr. Young or any one else did or attempted to do anything to stifle competition or chill the bidding at the February sale, which was open and fair to all. The whole trouble arose through the failure of the successful bidder at the first sale to comply with his bid in the manner prescribed by the decree of the Court; a failure for which he alone was responsible. It is to be regretted, of course, that Mr. Sansbury must lose his $300.00 deposited

at the December sale and he rendered liable for a deficiency judgment in the sum of $4,701.00; still, he and his attorney knew, or should have known, what the decree provided, and therefore that if the bid was not complied with in accordance with the decree a resale would follow as provided therein. The suggestion that Young, as receiver, occupies, as an officer of the Court, a different status in a matter of this kind from that of an individual appears to be unsound, and no authority has been called to our attention to support it.

In the light of the legal principles applicable, we think that the trial Judge erred in ordering a resale of the property. We hold that Young, as receiver, is entitled to a deed of the property upon compliance with his bid according to the terms of the decree.

In view of the conclusions reached, the question raised with regard to the settling of the case for appeal becomes academic and will not be considered.

The orders appealed from are reversed, and the case is remanded to the Circuit Court for further proceedings consistent with this opinion.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE BONHAM and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON, Circuit Judge, concur.

MR. JUSTICE CARTER concurs in result.

MR. JUSTICE COTHRAN did not participate on account of illness.