14262

IN RE WALLACE *ET AL.*
COURTENAY MFG. CO. *ET AL.* v. ISSAQUEENA MILLS *ET AL.*
(184 S. E., 849)

Messrs. *J. D. Lanford, Leppard & Leppard, Morgan & Cothran* and *Blease & Griffith,* for appellants.

Messrs. *B. F. Martin* and *W. H. Beckerdite,* for respondents,

March 28, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

J. W. Wallace, the Receiver for the Issaqueena Mills, filed a report of sale on May 20, 1935, setting forth, among other things, that he had sold 2,280 shares of the preferred stock of the Courtenay Manufacturing Company for $114,000-.00 and 4,970 shares of the common stock of the same company for $100.00 to C. F. Thompson. This sale was made at public auction under an order of the Court of Common Pleas for Pickens County, dated May 5, 1934.

Coincident with the report of sale, the Receiver petitioned the Court, upon due notice, for an order confirming the sale. The appellants appeared, and objected to the confirmation of the same upon the ground that the bid was grossly inadequate. His Honor, Judge Oxner, before whom the motion was heard, issued an order confirming the sale, and it is from his order that this appeal is taken.

The appellants in their brief state that the sole question before the Court in this appeal is, Did the trial Court err in

confirming the sale made by the Receiver of the stock in the Courtenay Manufacturing Company? The Circuit Judge in his order says: "There was put before the Court an audit recently made by auditors representing the objecting stockholders, who argue that the 'book value' of the stock is far in excess of the amount brought at the sale, but there is obviously little relation between book value and actual sales value of such property; there were no creditors objecting to the sale or the confirmation thereof; and it seems that the creditors are the virtual owners of the property and want their dividends from the receivers. The block of common stock sold for $100.00 and the 2,280 shares of preferred stock for $114,000.00 or $50.00 per share; the sale was made after due advertisement pursuant to order of the Court, and there is no question of irregularity or unfairness in relation thereto. And it was objected by the movants that in case of resale there was no assurance under present financial conditions that the stock would not be sold for much less than this amount. It was suggested by Mr. Lanford, attorney for the objectors, that if a few days should be allowed a better offer might be secured, and the Court withheld its decision for a few days to see if such offer could be obtained, but Mr. Lanford reported that the parties would be unable to submit such an offer."

We have carefully considered the record in this case, which is here for the second time on appeal. The former appeal, *Wallace et al. v. Issaqueena Mill et al.*, is reported in 175 S. C., 89, 178 S. E., 543, 545.

The appeal in that case was from an order of his Honor, Circuit Judge Greene, directing the sale of the identical stock which is hereinabove referred to. It was there held that the order directing the Receiver to sell the corporate assets without an audit was not an abuse of discretion as regards stockholders, where claims of creditors are far in excess of the value of the assets ordered sold.

In the order of his Honor, Judge Greene, directing the sale of this stock, it is said:

"It seems clear from the evidence that the situation of this corporation, so far as the stockholders are concerned, is hopeless. The debts evidenced by proven claims in the hands of the receivers amount to $1,282,832.66; the interest on this indebtedness for three and one-half years since the receivership of itself amounts to $314,294.01; total, $1,597,-126.67. The evidence indicates that the mill cannot nearly earn the interest on this large indebtedness, and the further it goes the worse its situation becomes.

"According to the evidence, the total estimated value of the assets will hardly be in excess of $500,000.00, not only wiping out the stockholders, common and preferred, but showing a loss for the creditors of more than $1,000,000.00. In fact, Mr. Norwood and other large creditors have seen fit to dispose of their claims to Cannon Mills, Inc., at 18.42 cents on the dollar, and Cannon Mills, Inc., now holds claims against the defendant in excess of one and a quarter million dollars. The creditors wish the property sold, and wish to receive whatever dividend will be coming to them."

In *Wallace v. Issaqueena Mill, supra,* this Court said: "The testimony discloses that an audit would be of no practical value to the appellants, or to any stockholder; for, as pointed out in the order of sale, the creditors are the virtual owners of the property. In other words, the valid claims of creditors are far in excess of the value of the plants. In these circumstances, it cannot soundly be held that the action of Judge Greene amounted to an abuse of discretion."

The main question before us is the alleged inadequacy of the bid in the light of the audit made by auditors employed by the objecting stockholders, and exhibited to his Honor, Judge Oxner, at the time he confirmed the sale made by the Receiver, and which is incorporated in this appeal record.

The authorities in this State are uniform in holding that inadequate consideration, standing alone, is not sufficient to set aside a deed made at a public sale under an order of the Court. *Ex parte Alexander,* 35 S. C., 409, 416, 14 S. E., 854, 856; *Ex parte Cooley,* 69 S. C.,

143, 155, 48 S. E., 92, 95; *McLean v. Crouch,* 99 S. C., 118, 122, 82 S. E., 988; *Connor v. McCoy,* 83 S. C., 165, 174, 65 S. E., 257.

In the *Alexander case* the Court says: "If, then, there was no surprise, the fact that the land brought at the sale a very inadequate price affords no ground for relief; for it is well settled that that alone affords no ground for assailing the validity of a public sale. There is no allegation, and certainly no proof, that there was the slightest fraud or concealment on the part either of the master or the purchaser, but, on the contrary, the testimony shows that the sale was conducted fairly; and, while we may regret that appellant has lost the opportunity of saving his debt by bidding at the sale, we cannot see that either the master or the purchaser contributed to such loss."

In the *Cooley case,* the Court says: "Where unfair means have not been employed to prevent competition at a judicial sale, mere inadequacy of price is no ground for setting it aside. *Coleman v. Bank,* 2 Strob. Eq., 285, 49 Am. Dec., 671; *Ex parte Alexander,* 35 S. C. [409], 416, 14 S. E., 854; 17 Ency. Law (2d Ed.), 1001. If the inadequacy of price is so gross as to shock the conscience, a Court of equity would doubtless seize upon other circumstances impeaching the fairness of the transaction as a cause for vacating it. *Robinson v. Association,* 14 S. C., 148; *Schroeder v. Young,* 161 U. S., 334, 16 S. Ct., 512, 40 L. Ed., 721, 17 Ency. Law (2d Ed.), 1003. But the circumstances impeaching the fairness of the transaction should relate to the conduct of the officer making the sale, as in *Farr v. Sims,* Rich. Eq. Cas., 122, 24 Am. Dec., 396, or to the conduct of the purchaser participating in the attempt to stifle competition or affected with notice thereof, as in *Carson v. Law,* 2 Rich. Eq., 296; *Hamilton v. Hamilton,* 2 Rich. Eq., 355, 46 Am. Dec., 58; *Barrett v. Bath Paper Co.,* 13 S. C., 128; *Herndon v. Gibson,* 38 S. C., [357], 360, 17 S. E., 145, with annotations in 20 L. R. A., 545, 37 Am. St. Rep., 765; *Toole v. Johnson,* 61 S. C. [34], 40, 39 S. E., 254."

It must be conceded that litigation in any given case must eventually end. So a time comes when a public sale of real or personal property, regularly made, must be confirmed, no inequitable features supervening. Such a time has been reached in this case.

Upon a consideration of the entire record, we are of ■ the opinion that the discretion of the Circuit Judge was wisely exercised.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER and BAKER concur.