William **MELHORN** et al., Plaintiffs,

v.

**AMREP CORPORATION** et al.,
**Defendants.**

**Civ. No. 73–264.**

United States District Court,
M. D. Pennsylvania.

April 19, 1974.

Thompson J. McCullough, Liverant, Senft & Cohen, York, Pa., for plaintiffs.

Harold S. Stern, Roger W. Van Deusen, Metzenbaum, Gaines, Finley & Stern Co., L. P. A., Cleveland, Ohio, David E. Lehman, McNees, Wallace & Nurick, Harrisburg, Pa., for defendants.

## MEMORANDUM OPINION

HERMAN, District Judge.

The defendants' motion for summary judgment requires resolution of the narrow issue of equitable estoppel. Plaintiffs' cause of action is founded upon the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. The defendants have moved for summary judgment on the ground that the statute of limitations bars the action. Plaintiffs, both in oral argument and by briefs, do not dispute that the relevant time limitation had indeed passed.[1] Instead, plaintiffs narrowed the issue further by invoking the doctrine of equitable estoppel.

The substance of the plaintiffs' argument is that the defendant corporations engaged in a pattern of conduct intended to induce the plaintiffs to delay instituting legal action until the statute of limitations expired. The defendant AMREP is a New York corporation engaged in the development and sale of real estate. The defendant M.R.C. Realty Corp., is a Pennsylvania corporate subsidiary of AMREP. Rio Rancho Estates, Inc. is also an AMREP subsidiary, selling realty located near Albuquerque, New Mexico.

The defendants, through M.R.C., solicited buyers in the Middle District of Pennsylvania for lots at Rio Rancho. The named plaintiffs are all married couples who entered into a series of lot purchases. In some cases the parties invested substantial sums of money and bound themselves to costly future monthly installments on the lots.[2]

According to the plaintiffs' affidavits the defendants solicited the realty purchases through free dinners held locally. There the defendants extolled the lucrative investment opportunities of Rio Rancho Estates. The purchasers were encouraged to buy numerous lots which the defendants allegedly promised would rapidly increase in value by as much as 25% within 18 to 24 months. Part of the fraud were the defendants' alleged promises to sell the plaintiffs' newly acquired land for them at future sales dinners held nationwide. The only promises which apparently proved fulfilled were those binding the plaintiffs to ownership of the land. As the months

---

1. The statute of limitations for the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1711, sets three different time periods: "No action shall be maintained to enforce any liability created under section 1709(a) or (b)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 1709(b)(1) of this title, unless brought within two years after the violation upon which it is based. In no event shall any such action be brought by a purchaser more than three years after the sale or lease to such purchaser."

The two-year statute of limitations urged by the defendants was not disputed by the plaintiffs. Nor did the plaintiffs take issue with the defendants' method of computing the statute by which August 2, 1972 was established as the last date available to file a complaint.

2. For example, Charles McCombs, et ux, entered into nine agreements of sale, showing a total cash sale price of $133,145.00. Arthur J. Grundy, et ux, committed themselves to agreements of sale totalling $44,925.00.

went by and their lots were not sold to other prospective dinner guests, the plaintiffs became disgruntled. They met together and jointly sought satisfaction from the defendants.

■■ The burden of establishing the applicability of the statute of limitations as an affirmative defense falls to the defendants. Here, however, the plaintiffs have not disputed the claim that the appropriate statute has run, but rather have disputed its applicability. The burden is then on the plaintiffs to show why the doctrine of equitable estoppel should be invoked. Burke v. Gateway Clipper, Inc., 441 F.2d 946, 948 (3d Cir. 1971).

■ Plaintiffs have urged upon the court the argument that equitable estoppel to bar invoking the statute of limitations is a factual question for the jury. We disagree. There is some implied support for such an analysis, Longo v. Pittsburgh and Lake Erie R. R. Co., 355 F.2d 443 (3d Cir. 1966). However, this circuit has more recently stated:

> "The nature of the representations and of the conduct of the defendant are of crucial significance in determining if the plaintiff is to be allowed to invoke this equitable principle of estoppel. This is a question of law to be determined by the court. In a motion for summary judgment the burden is on the plaintiff to present facts . . . which if true would require a court as a matter of law to estop the defendant from asserting the statute of limitations." Burke v. Gateway Clipper, Inc., 441 F.2d, at 948–949 (3d Cir. 1971). *See also*, George v. Hillman Trans. Co., 340 F.Supp. 296 (W. D.Pa.1972).

■ Further, the standards which control the application of equitable estoppel are federal. Scarborough v. Atlantic Coast Line Rwy., 190 F.2d 935 (4th Cir. 1951), cited with approval in Glus v. Brooklyn Eastern Terminal, 359 U.S. 231, 235, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959).

The more complex problem is what standards the court must use to measure the defendants' conduct. We begin with the maxim of universal applicability in cases of equitable estoppel: "no man may take advantage of his own wrong." Glus, *supra*, at 232, 79 S.Ct. at 762. The Glus decision involved a federally created cause of action in which the defendant affirmatively misled the plaintiff as to length of the statute of limitations. Although no such allegation exists in the instant case, Glus provides some helpful guidelines. The Court required that the plaintiffs justifiably relied in good faith on the defendant's conduct which caused the plaintiffs to be "lulled into a [sense of] false security," citing Schroeder v. Young, 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721 (1896).

This circuit's recent decision in Burke, *supra*, concluded the plaintiff must establish that:

> "[He] was misled by defendant or its agents so that he delayed suit because of (a) an affirmative statement that the statutory period to bring the action was longer than it actually was, or (b) promises to make a better settlement of the claim if plaintiff did not bring suit or (c) comparable representations and conduct." Burke, *supra*, 441 F.2d at 949.

We find no allegation that the defendants affirmatively duped the plaintiffs as to any relevant statutes of limitations. Likewise, there is no allegation that the defendants offered a settlement or compromise *in exchange for* plaintiffs' forebearance to bring suit. Indeed, there is no indication that a formal law suit was ever discussed between the parties. Only the third category in Burke appears to have any application to the instant case. The "comparable representations and conduct" by the defendants did involve informal negotiations, although never in exchange for the plaintiffs' forebearance to sue.

This circuit has apparently never defined the type of conduct sufficient to invoke equitable estoppel where there

exists neither formal misrepresentation regarding the statute of limitations nor where the plaintiff was expressly induced to withhold suit on the promise of favorable settlement terms.

■ In view of Burke, *supra,* this court concludes that the defendants' "conduct or representations," taken as a whole, must "lull" the plaintiff into not timely pursuing his legal rights. Glus, *supra;* Scarborough, *supra. See generally,* Conradi v. Boone, 316 F.Supp. 918 (S.D.Iowa 1970). It follows that there cannot be estoppel by inference. Mescall v. W. T. Grant Co., 133 F.2d 209 (7th Cir. 1943). The plaintiff must clearly rely upon the defendant's conduct or representations in forebearing to sue. Robbins v. Esso Shipping Co., 190 F. Supp. 880 (S.D.N.Y.1960); DeLuca v. Atlantic Refining Co., 176 F.2d 421 (2d Cir. 1949); Carr-Consolidated Biscuit Co. v. Moore, 125 F.Supp. 423 (M.D.Pa. 1954). Sitting as a court of equity, it is likewise necessary that the plaintiff's reliance be in good faith. Bergeron v. Mansour, 152 F.2d 27 (1st Cir. 1945); and justifiable. Benson v. Milwaukee Road, 353 F.Supp. 889 (E.D.Wis.1973). Moreover, the plaintiff must be reasonably diligent in seeking out all relevant facts. Hoeflich v. William S. Merrell Co., 288 F.Supp. 659 (E.D.Pa.1968); Bealle v. Nyden's, Inc., 245 F.Supp. 86 (D.Conn.1965).

■■ There appears to be no general requirement that the defendant intend the representations or conduct to induce delay, nor need they constitute actual fraud. Benson, *supra;* Tillery v. Southern Rwy. Co., 348 F.Supp. 9 (E.D.Tenn. 1971); Moore, *supra.* It is also widely held that mere negotiations, without more, do not amount to conduct sufficient to invoke equitable estoppel. Sam Finley, Inc. v. Pilcher, Livingston & Wallace, Inc., 314 F.Supp. 654 (S.D.Ga. 1970); Howard University v. Cassell, 75 U.S.App.D.C. 75, 126 F.2d 6 (1941), cert. denied, 316 U.S. 675, 62 S.Ct. 1046, 86 L.Ed. 1749 (1942). In sum, we find persuasive the language in McWaters

and Bartlett v. United States for the use and benefit of Wilson, 272 F.2d 291, 296 (10th Cir. 1959), cited with approval in United States v. Reliance Ins. Co., 436 F.2d 1366, 1370 (10th Cir. 1971):

" 'Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay. To constitute estoppel there must be deception relied upon by the other to his detriment. . . . ' "

The plaintiffs' affidavits and version of the case clearly establish that they were at all times acting in good faith and that they made reasonable efforts to protect their investments, albeit without the much-needed assistance of counsel.

However, the plaintiffs' affidavits fail to even hint at an incident or pattern of conduct sufficient to invoke equitable estoppel. For example, the affidavits of the McCombs and the Melhorns establish that the defendants were highly noncommittal. Indeed, the McCombs' affidavit expressly stated that the meetings between the plaintiffs and defendants were held at the behest of the plaintiffs (paras. 6 and 8).

In certain cases the defendants entered into "cut-back" agreements, permitting some plaintiffs to reduce the number of lots they were buying while applying the full monies paid to the remaining lots. The "cutbacks" gave actual satisfaction as to part of the land purchased. There is nothing in such agreements that indicates wrongdoing which would reasonably be expected to cause the plaintiffs to delay suit. From the affidavits it fully appears that all parties were aware that the agreements

would not be carried to the extent of complete recision and refund.

The tenor of the plaintiffs' affidavits indicates that the defendants promised only to hear their grievances. In the McCombs' affidavit (para. 9) they note that at the June 15, 1972 meeting no progress was made—"we could get no commitments from the representatives of the defendants . . . ." A June 5, 1972 phone call *to* the President of AMREP *from* Mrs. McCombs resulted in his flat refusal to even answer her questions (para. 7).

The Melhorn's affidavit indicated (para. 5) that at meetings in late 1971 and early 1972, "we were informed that there would be no refund and that the defendants would not guarenty [sic] to resell the lots."

The Benchoff's affidavit notes (para. 5) that as early as November 1971, "we were informed that there would be no such thing as resale of the lots by the defendant."

The Grundy's affidavit shows that on August 8, 1972 (six days *after* the statute expired), the defendants' agents said there existed "a possibility" of resale of the lots or reduction of the number. The plaintiffs note that in October, two months *after* expiration of the statute, the Grundys entered into a "cutback" agreement. The plaintiffs find the October agreement *significant in showing* inequitable conduct on the part of the defendants. We do not. It merely establishes that the defendants, no longer subject to timely suit, nevertheless granted the Grundys a reduction in their obligation. The instant situation is wholly distinct from Reliance Insurance, *supra,* in which a defendant waits until expiration of the statute, then "breaks off negotiations and denies liability . . . ." 436 F.2d. at 1370.

We conclude from the preceding evidence that the plaintiffs were not wrongfully induced to delay suit, but rather unwisely held out hope of settlement too long. The evidence does not, as a matter of law, estop the defendants from interposing the statute of limitations as a defense. The statute having run its course, the defendants' motion for summary judgment will be granted.

The plaintiffs' claims,[3] whatever their merit, are being disposed of today on a purely procedural basis. Regrettably, the opportunity for the redress sought might have been preserved had the plaintiffs timely sought the advice of counsel.

This decision is limited to the issue of equitable estoppel and in no way reaches the merits of claims raised by the plaintiffs now before the Pennsylvania Real Estate Commission and Court of Common Pleas of York County.

An appropriate order will be entered.

---

3. On April 9, 1974, the plaintiffs Edward P. and Leonore Olzewski discontinued their claim with prejudice by stipulation of the parties and approval of the court.