BROWN v. THE BARNWELL MFG. CO.

1.  SHERIFF—ENTRY OF SALE—WAIVER—CASE FOLLOWED.—A sheriff must make a memorandum in writing on his sale book showing the purchaser of property at his sale, and on the trial of an issue involving that question, a party has a right to demand the production of the sheriff's sale book, following *Daniel* v. *Harley*, 3 Strob., 234; but where parol testimony, as to such facts as should be recorded in the sheriff's sale book, is taken without objection, the right to afterwards object on the ground that such testimony was obnoxious to the statute of frauds is *waived.*

2.  SHERIFF—SHERIFF'S SALES.—If the act of a sheriff, in reselling on same day at risk of former purchaser, was an unreasonable exercise of the discretion allowed him by law, all the proceedings after the first sale are null and void.

3.  IBID.—IBID.—CREDITOR—DEBTOR—PURCHASER—CASE FOLLOWED.—The sheriff at a sale under execution represents the creditor, debtor, and purchaser, and must so act as to subserve the interest of all such parties, following *Farr* v. *Sims*, Rich. Eq. Cases, 122.

4. IBID.—IBID.—PURCHASER.—A piece of property sold under execution was
   bid off in good faith; was resold at risk of first purchaser before expiration
   of hours of sale; at time of resale purchaser was making efforts to comply,
   and had the money ready before close of hours of sale. *Held*, that the
   second sale was void, and the first purchaser should take the property.

Before GARY, J., Barnwell, June 24, 1895.    Affirmed.

Action by Simon Brown against the Barnwell Manufac-
turing Company, J. W. Lancaster, as sheriff of Barnwell
County, and C. M. Hires, commenced April 7, 1894.    The
facts are fully set forth in the following decree of the Cir-
cuit Judge:

At the March term of the Court of Common Pleas of
Barnwell County, 1894, D. W. Dyches and various other
creditors of the Barnwell Manufacturing Company obtained
judgments against the said Barnwell Manufacturing Com-
pany, aggregating a total of over $1,000, and in due time
executions were regularly issued on said judgments and
lodged with the defendant, J. W. Lancaster, as sheriff of said
county, with instructions to realize on the same.    By au-
thority of said judgments and executions, the said sheriff
duly levied upon and advertised for sale all that certain lot
of land, situate, lying, and being in the town of Barnwell,
including the plant of the Barnwell Manufacturing Com-
pany, and the attachments and appliances of the same.    On
the 7th day of May, at Barnwell, in accordance with the
said advertisement of sale, the defendant, J. W. Lancaster,
as sheriff, offered the said property for sale, giving public
notice before said sale, in accordance with section 2121 of
the Revised Statutes, that the terms of the sale were for
cash.    At said sale, Laurie T. Izlar, a member of the Barn-
well bar, bid in the property for the sum of $1,510.    For
whom Mr. Izlar was bidding, is the subject of much con-
troversy, and upon which there is much conflict in the
testimony.    I think much of the conflict arises from the
fact that Mr. Izlar was acting for the plaintiff, Simon
Brown, who was to furnish the money, in connection with

Mike Brown, the president of the company, who were also interested in the purchase, and that Mr. Izlar did not know at the time he bid off the property in whose name it was desired the title should be made.

Immediately after the property was struck off, as it is commonly called, "knocked down," to Mr. Izlar, the sheriff adjourned to his office for the purpose of having the terms of sale complied with and executing title. Mr. Izlar was either in the office at the time or came in shortly afterwards, and upon being asked by the sheriff "if he was ready to comply with his bid," he replied, "that he was not; that he would have to communicate with Simon Brown before he was ready." Mr. Izlar was then informed by the sheriff that he would be allowed until 1 o'clock to comply, whereupon he requested that the time be extended till 2 o'clock, which request was promptly granted. Mr. Izlar then attempted to communicate with Simon Brown (by telegraph), who had gone to Savannah, Georgia, and failed to get an answer by the time the hour for a resale of the property had arrived. While Mr. Izlar was awaiting communication with Simon Brown he endeavored to make some arrangement with Mr. G. Duncan Bellinger, one of the attorneys for a majority of the judgment creditors, but in the effort he was unsuccessful, about the details of which there is also much conflicting testimony. From the view I take of the case, these details are immaterial. They are only important as showing that Mr. Izlar tried in good faith to comply with his bid at the very time he was trying to communicate with Simon Brown. It may be important to state in this connection that Mr. Izlar claims to have drawn and tendered to the sheriff a draft on Simon Brown to the amount of his bid, to the amount of the judgments and cost against the defendant company.

From the testimony of the sheriff, who, it seems, was impartial in the matter, and the testimony of Mr. Bellinger and Mr. Patterson, I am of the opinion that no draft was actually drawn or tendered, but that an offer so to do was

made, and the offer was declined unless the bank would cash the same when executed. I am strengthened in this view from the fact that no such draft was offered in evidence, nor was its absence in any way accounted for after the fact had been controverted. Having said this much, I think it due to Mr. Bellinger to state that his actions in the matter of the attempted negotiations have impressed me with the fact that he did all that he reasonably could, and possibly more than he was called upon to do, in his efforts to facilitate and assist Mr. Izlar in raising the money with which to comply with his bid, and the charge·that he and other attorneys representing the several judgment creditors exerted any improper influence over the sheriff in reselling the property is, to my mind, totally at variance with their actions in the matter. Mr. Brown's counsel having failed to hear from him within the time allowed by the sheriff, and having failed to perfect an adjustment satisfactory to the opposing counsel, the sheriff proceeded to resell the property, giving notice, in accordance with the statute, that the sale was at the risk of the former purchaser. At this sale, the property was struck off to the defendant, C. M. Hiers, for the sum of $1,021, a depreciation of $489. Before the defendant, Hiers, had complied with his bid, and before the sheriff had executed the title deed to him, communication had been had with the plaintiff, Simon Brown, and, as a result, parties interested in Brown's purchase notified the sheriff, before the hours of sale had expired, that they were ready to comply with Mr. Izlar's bid, and objecting to the sheriff executing a deed to the defendant, Hiers; and later, but still before any deed had been executed to Hiers, or any money paid on account of his bid, a tender of the amount covering the judgment was made to the sheriff, the party claiming authority to receipt to the sheriff for the excess above the judgment on behalf of the defendant company. At this time a demand that a deed be executed to Brown was also made. After some deliberation on the part of the sheriff, he concluded that he

was legally bound to execute titles to Hiers, and accordingly did so, upon Hiers complying with his said bid. Upon this state of facts, this suit is brought for the purpose of setting aside the deed to Heirs, and requiring the sheriff to execute a deed to Simon Brown, upon his compliance with his said bid. The issue, then, is, who has a right to a deed to the premises, the plaintiff, Simon Brown, or the defendant, C. M. Hiers? It is forcibly contended, on the part of the attorneys of Hiers, that the statute law of the State regulating sheriffs' sales under executions is mandatory, and the sheriff simply having complied with the mandate of the statutes, it follows as a legal sequence that the deed to Hiers must stand. The section of the statutes referred to is 2121, and reads: "Every sheriff's sale made by virtue of the direction of an execution shall be for cash; and if the purchaser shall fail to comply with the terms aforesaid, the sheriff shall so resell on the same day, if practicable, and if not, on the next succeeding salesday, making in every such case a proclamation he is reselling at the risk of such defaulting former purchaser."

There is no doubt of the fact that the defendants have a strong legal position, and I am free to admit that I have been, and am still, very much impressed with its force. But still, on the other hand, I am more impressed with the plaintiff's equity. Under a strict construction of the statute, we are called upon to decree, that he is what the statute terms "a defaulting purchaser," when the facts show that before the legal hours of sale had elapsed, and before the second purchaser had paid any money, and before the sheriff had executed a deed taking the title out of the judgment debtor (the Barnwell Manufacturing Company), we find the plaintiff actually knocking at the door of the sheriff's office and demanding that he be permitted to comply with his bid, asking that he be not considered in default, and not only lose advantage of his purchase, but that he be required to pay the sum of $489, the difference between Brown's bid and that of Hiers. I cannot believe the Gen-

eral Assembly of South Carolina intended any such construction should be put upon the statute.

The statute was intended to correct the evil of sham bids, and those of parties who bid at such sales with a view to postpone the time when a change of the possession of the premises is to take place. It was not intended to prevent a *bona fide* purchaser from receiving title because he was not prepared to comply with his bid at the moment the hammer fell to "shell out the cash." In this day of banks, drafts, and checks, it is not to be expected that a bidder at sheriffs' sales should be laden down with rolls of currency with which to comply with his bid. It is not progressive and in keeping with the spirit of the age—it is not equitable. We have not been cited to any authority directly in point, nor have we been enabled to find any; the nearest approach in the case of *Yates* v. *Gridley*, 16 S. C., 503. The Court in that case say: "The land was sold on salesday in December, the terms being cash sufficient to pay costs and disbursements of suit, and the balance on a credit of one year; and upon failure by purchaser to comply, then an immediate advertisement for resale on the next salesday or upon some convenient salesday thereafter, at the risk of the former purchaser." It seems that the appellant did not comply on the day of sale in December, but did comply during the month of January thereafter, and the clerk executed titles. "Why compliance was not made on the day of sale does not fully appear. If appellant *refused* to comply or was wholly at fault, she could not have demanded thereafter a specific performance. *Seymour* v. *Preston*, Spears' Eq., 486. But in the absence of fraud or collusion, we do not think that a failure to comply literally with the terms of sale, as to cash payment the moment the hammer falls, is such failure in itself as will in every case forfeit the bid."

"It does not appear, however, that the conveyance from the clerk has been set aside for fraud, but solely upon the ground that the terms of sale as to the payment of the cash portion immediately upon the sale were not complied with.

We do not think that fact in itself unexplained when these terms were complied with within so short a time afterwards, as above were sufficient to annul the clerk's deed."

It is, therefore, ordered, that the deed executed by the defendant, J. W. Lancaster, as sheriff of Barnwell County, be set aside, upon the plaintiff, Simon Brown, paying to said sheriff the sum $1,510, the amount of his said bid; and upon his failure so to do upon proper demand, the complaint in this case be dismissed.

It is further ordered, that, upon the payment by said plaintiff of the sum of $1,510, the said J. W. Lancaster, as sheriff of Barnwell County, is hereby ordered and directed to execute and deliver to the said plaintiff, Simon Brown, and his heirs and assigns forever, a proper deed of conveyance of the premises described in the plaintiff's complaint.

It is further ordered, that in the event that the said plaintiff, Simon Brown, comply with the terms of this decree, that the said sheriff is hereby directed and ordered to refund or repay to the said defendant, C. M. Hiers, the sum of $1,021, the amount paid by said Hiers on account of his said purchase.

From this decree the defendants appeal on the following exceptions:

1. That his Honor, the presiding Judge, erred in finding as matter of fact that, "before the defendant, Hiers, had complied with his bid, and before the sheriff had executed the title deed to him, communication had been had with the plaintiff, Simon Brown, and, as a result, parties interested in Brown's purchase notified the sheriff before the legal hours of sale had expired that they were ready to comply with Mr. Izlar's bid, and objected to the sheriff executing a deed to the defendant, Hiers." Whereas it appears from the testimony, and his Honor should have found, that the defendant, Hiers, complied with his bid immediately after the sale, and had settled with the sheriff and judgment creditors by payment before the plaintiff or

his representative notified the sheriff that he was ready to comply with Mr. Izlar's bid.

2. That his Honor, the presiding Judge, erred in finding as matter of fact that, "before any deed had been executed to Hiers, or any money paid on account of his bid, a tender of the amount covering the judgment was made to the sheriff, the parties claiming authority to receipt to the sheriff for the excess above the judgments on behalf of the defendant company."

3. That his Honor, the presiding Judge, erred in finding as matter of fact "that before the legal hours of sale had elapsed, and before the second purchaser had paid out any money, and before the sheriff had executed a deed taking title out of the judgment debtor (the Barnwell Manufacturing Company), we find the plaintiff actually knocking at the door of the sheriff's office, demanding that he be permitted to comply with his bid."

4. That his Honor, the presiding Judge, having found as matter of fact "that Mr. Izlar did not know at the time he bid off the property in whose name it was desired the titles should be made," erred in not further finding as matter of fact that there was no sufficient memorandum in writing made by the sheriff at the time of the sale showing the plaintiff to be the purchaser.

5. That his Honor, the presiding Judge, erred in finding as matter of fact that the bid made at the first sale by Mr. Izlar was the bid of the plaintiff, no memorandum in writing to that effect having been made at the time of the bid.

6. That his Honor, the presiding Judge, erred in not finding as matter of fact that there was no tender made of the amount bid by Mr. Izlar, either on the part of the plaintiff or his representatives.

7. That his Honor, the presiding Judge, erred in holding and concluding as matter of law that the plaintiff had until the expiration of the legal hours of sale within which time to comply with the bid made by Mr. Izlar.

8. That his Honor, the presiding Judge, erred in holding

and concluding as matter of law that the plaintiff still had the right to comply with the bid made by Mr. Izlar after the property had been struck off to C. M. Hiers, the purchaser, at the resale; whereas his Honor should have concluded that the purchaser at the resale acquired an inchoate title in the land by virtue of his bid and its acceptance by the sheriff, which could not be defeated by the purchaser at the first sale then complying with his bid.

9. That his Honor, the presiding Judge, erred in holding and concluding as matter of law that the purchaser at the first sale had the right to comply with his bid at any time before the execution of the sheriff's deed to the purchaser at the resale.

10. That his Honor, the presiding Judge, erred in holding and concluding as matter of law that an offer to give a check or draft on some private party or corporation, instead of legal tender, in payment of the amount bid, amounted to a *bona fide* compliance or attempt to comply with said bid, as required by section 2121 of the Revised Statutes.

11. That his Honor, the presiding Judge, erred in not concluding as matter of law that the plaintiff waived any right to comply with Mr. Izlar's bid after 2 o'clock on the day of sale, his Honor having found as matter of fact that Mr. Izlar requested that that time be allowed him within which to arrange to comply with said bid before the resale.

12. That his Honor, the presiding Judge, erred in holding and concluding as matter of law that section 2121 of the Revised Statutes of 1893 is not mandatory in requiring the sheriff to resell on the same day at the request of the plaintiff in execution.

13. That his Honor, the presiding Judge, erred in not finding as matter of fact that the sheriff was required by the plaintiff in execution to resell on the same day if the purchaser did not comply with the terms of the sale, and in not concluding as matter of law that the resale by the sheriff on the same day as the first sale was authorized by section 2121 of the Revised Statutes.

*Messrs. Patterson & Holman* and *Bellinger, Townsend & O'Bannon,* for appellants.

*Messrs. L. T. Izlar* and *Robert Aldrich,* contra.

March 21, 1896. The opinion of the Court was delivered by

MR. JUSTICE GARY.    The facts in this case are fully set forth in the decree of his Honor, the Circuit Judge, which, together with the appellants' exceptions, will be incorporated in the report of the "Case."

The exceptions will not be considered in the order in which they are numbered in the case. The fourth and fifth exceptions raise the question, that there was no memorandum in writing made by the sheriff showing that the plaintiff was the purchaser of the property. When the plaintiff offered his testimony relative to the sale of the property, the defendants had the right to object to such testimony unless in writing, and to demand production of the sheriff's sales book. *Daniel* v. *Harley,* 3 Strob., 234. Witnesses, however, were allowed to testify without objection to such facts as were required by law to be entered in the sheriff's sales book, and appellants thereby waived their right to object to such testimony on the grounds that it was obnoxious to the statute of frauds.

A careful consideration of the decree of the Circuit Judge satisfies us that the seventh, eighth, ninth, and tenth exceptions were taken under a misapprehension of said decree. The language of the Circuit Judge was intended merely to illustrate the spirit of our statute relating to resales by sheriffs.

We cannot sustain the point for which the appellants contended in the eleventh exception. Mr. Izlar was anxious to get as much time as possible within which to comply with the terms of sale, but there was no testimony showing that he intended to abandon any of his client's rights. If the act of the sheriff in reselling the property was, under the circumstances, an unreasonable

exercise of the discretion allowed him, then all the proceedings subsequent to the time when the property was bid off by Mr. Izlar, as attorney for Simon Brown, were null and void; and, therefore, the exceptions, raising questions of fact as to what took place after the property was resold, could have no effect in determining the rights of the parties to this action.

We come now to a consideration of the twelfth and thirteenth exceptions, which raise the main question in the case. Section 2121 of the Rev. Stat. provides: "Every sheriff's sale, made by virtue of the directions of an execution, shall be for cash; and if the purchaser shall fail to comply with the terms aforesaid, the sheriff shall proceed to resell at the risk of the defaulting purchaser, either on the same or some subsequent saleday, as the plaintiff may direct; and in the absence of any direction by the plaintiff, the sheriff shall so resell on the same day, if practicable, and if not, on the next succeeding saleday, making, in every such case, proclamation that he is reselling at the risk of such defaulting former purchaser." The sheriff represents in such cases the creditor, debtor, and purchaser, and he must act in such a manner as best to subserve the interests of all such parties. *Farr* v. *Sims*, Rich. Eq. Cases, 122.

The facts in this case show: 1st. That the property was bid off in good faith by Mr. Izlar, as attorney for Simon Brown. 2d. That at the time that the property was resold, he was making efforts to comply with said bid. 3d. That before the legal hours of sale expired, he had made arrangements to comply with the terms of sale.

Mr. Izlar had bid off property on other occasions, and was allowed to pay for it with his check. No question was made as to his high character and financial standing. Under all the circumstances, it seems to this Court that the sheriff should have at least allowed the attorney all the time possible before the expiration of the legal hours of

sale, on the day when the property was sold, for complying with his bid, especially when the attorney was taken by surprise by the requirement of the strict compliance with the terms of sale.

We are, therefore, of opinion that the second sale of the property was null and void. It should also be remembered that the hasty action of the sheriff in reselling the property caused it to bring nearly $500 less than the amount for which it was first sold.

The conclusion at which this Court has arrived renders it unnecessary to consider the first, second, third, and sixth exceptions, which only relate to matters occurring after the resale of the property.

It is, therefore, the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE, *concurring.* It is with great reluctance that I concur in this opinion.