550 S.E.2d 877

Ex parte: Louie E. MOORE, formerly doing business as Fairfield Real Estate Company, Inc., Appellant,

and

Britt Rowe, Purchaser, and Community Federal Savings & Loan Association, Respondents.

In re: Jerry W. Branham, Plaintiff,

Fairfield Real Estate Company, Inc., Theophilus L. Davis, Peggy K. Branham, Betty Portee, Abraham Khalil, The Bank of Ridgeway, and Community Federal Savings & Loan Association, Defendants.

No. 3352.

Court of Appeals of South Carolina.

Heard May 8, 2001.

Decided June 4, 2001.

Rehearing Denied Aug. 17, 2001.

276

Leonard R. Jordan, Jr., of Berry, Quackenbush & Stuart, of Columbia, for appellant.

Robert E. Stepp and Laura W. Robinson, both of Sowell, Gray, Stepp & Laffitte, of Columbia; and R. Westmoreland Clarkson, of Winnsboro, for respondent Community Federal Savings & Loan Association.

Walter B. Todd, Jr., and J. Derrick Jackson, both of Todd, Holloway & Ward, of Columbia, for respondent Britt Rowe.

ANDERSON, Judge:

This appeal involves a special referee's conduct at a mortgage foreclosure sale. Louie E. Moore ("Moore") was the highest bidder at the foreclosure sale of certain real estate owned by Fairfield Real Estate Company, Inc. ("Fairfield"), at which time Moore was the president and sole shareholder of Fairfield. The referee then announced Moore was required to tender his earnest money to the court within fifteen minutes of the closing of the first sale. After Moore could not tender his deposit within the allotted time limit, the referee re-auctioned the property. Moore objected to the second sale and moved to confirm the first sale. Moore's objections were denied. Moore appeals. We reverse.

## FACTS/PROCEDURAL BACKGROUND

Certain property owned by Fairfield [1] was foreclosed on by

---

1. Fairfield Real Estate Company, Inc. was formerly Fairfield Oil Company. The company changed its name by filing its Articles of Amendment to its Articles of Incorporation on October 12, 1988.

one of Fairfield's mortgagors, Jerry W. Branham.[2] By order filed December 18, 1998, the special referee ordered the subject property[3] to be sold at public sale, with no deficiency judgment requested. The referee stated in the fourth paragraph in his judgment order that the sale was:

A. *FOR CASH:* The Special Referee will require a deposit of 5% on the amount of the bid (in cash or equivalent), same to be applied on the purchase price only upon compliance with the bid, but in the case of non-compliance within 30 days, same to be forfeited and applied to the costs and the first mortgage lien.

The Amended Notice of Sale filed January 27, 1999, reiterated the "terms of sale" which were, in part:

A. FOR CASH. The Special Referee will require a deposit of five (5%) per cent of the amount bid (in cash or equivalent), the same to be applied on the purchase price upon compliance with the bid, but in case of noncompliance within

---

2. Branham was a former shareholder in Fairfield. He sold his stake to the company in 1986. Fairfield gave Branham a series of notes and mortgages in exchange for his interest. Fairfield eventually defaulted on its obligation to Branham. Branham consequently pursued foreclosure. This foreclosure action and the priorities of several mortgage liens on the subject property is the subject of a separate appeal filed by Jerry Branham on January 19, 1999. By unpublished opinion, we affirmed the referee's findings and order of sale under his Order of Foreclosure filed December 18, 1998. *Branham v. Fairfield Real Estate Co.,* Op. No.2001–UP–303 (S.C. Ct.App. filed May 31, 2001).

3. The property is described as:

All those piece, parcel or lots of land containing collectively 33.03 acres, more or less, lying, being and situate at, and near, the intersection of S.C. Hwy No. 34 and Secondary Rd S–20–159, approximately two (2) miles Southeast of the Town of Ridgeway in the County of Fairfield, State of South Carolina. Said parcels being more particularly shown and designated as Parcel No. 8 containing 9.99 acres, parcel No. 26 containing 9.00 acres, and parcel No. 27 containing 14.04 acres, and that portion of parcel No. 21 containing approximately 1.75 acres representing the fifty foot wide driveway running from S–20–159 to the southwestern corner of Parcel No. 22, all as more particularly shown on a plat made by Carl A. Holland, Jr. dated March 24, 1987 recorded in Plat Cabinet "B" at Page 350 in the office of the Clerk of Court for Fairfield County.

Being a portion of the property conveyed to Fairfield Real Estate Company, Inc. formerly Fairfield Oil Company by deed of David Dubose Gailland, II recorded September 23, 1986 in Deed Book "IW" at Page 289.

30 days after the date of the sale, same to be forfeited and applied to costs and the first mortgage lien.

The referee conducted the foreclosure sale on March 1, 1999. Moore, formerly doing business as Fairfield, Britt Rowe ("Rowe"), and other bidders attended the sale. Moore offered the highest bid of $96,000 for the subject 33.03 acre tract, which was approximately $11,000 more than Rowe's second place bid. Upon Moore's being declared the highest bidder, the special referee ordered Moore to produce his 5% deposit of $4,800 within five minutes.[4] When Moore proffered he could not secure his funding immediately, the special referee allowed Moore fifteen minutes to secure the deposit.

Moore was unable to secure financing within this fifteen minute allowance. Moore testified in a subsequent hearing that he was unable to reach his financier, Craig McMaster, a member of the board of trustees for Community Federal Savings & Loan Association ("Community"). Thereafter, the referee reopened the bidding without Moore's participation, whereupon Rowe offered the highest bid of $84,000. Rowe posted a cashier's check worth 5% of his bid with the court within fifteen minutes of the close of the second bidding. At approximately 4:30–4:45 p.m. on the day of the sale, Moore posted 5% of his bid from the first sale with the Fairfield County Clerk of Court.

On March 11, 1999, Moore filed an objection to the confirmation of the second sale of the property and moved to confirm the initial foreclosure sale. A hearing before the referee was held March 25, 1999, in which Moore's motions were denied by order filed April 22, 1999. Moore moved to alter or amend the special referee's order on May 3, 1999.

At the hearing, the referee waived recitation of the facts, stating they were not in dispute and that he knew all the relevant facts from participating in the prior case proceedings. Also, the referee admitted he treated Moore differently than other bidders on the property because:

---

**4.** Since the referee had no recollection of first requiring Moore to tender his deposit within five minutes of the close of bidding, this requirement was presented by testimony from Alan W. Pullen, president of Community.

[Moore is] the one that's had five years to make his payments. He's the one that has not made his payments. He's the reason we [were] selling the property.

Additional relevant exchanges with the court are repeated below:

Moore's Counsel: Well, again, I don't think that [who the bidder was is] an issue that matters. And again, I have a feeling that the Court is taking the position that because the bidder happen [sic] to be the owner of the property[,] he should be treated more strictly and severely than a bidder who is not.

The Court: Let me tell you what the facts are clearly in this case, Mr. Jordan. Mr. Moore failed to pay three debts of written notes. Mr. Moore sold contracts of sale of real estate for the subject property that was subject to two mortgages to innocent third parties. In addition to that, Mr. Moore sold those contracts and received money from them withóut selling the underlying land or obtain [sic] a release from those mortgages. All of that's in the records[,] and *in my opinion[,] because of that this court has some judgment and discretion as to what time period it's going to allow that person*, as known through these proceedings not outside of anything that took place in this case, *as to what I'm going to allow him to come up with the money*, what time period to come up with the money. Does that sound unreasonable to you?

Moore's Counsel: Your Honor ... it sounds like to me you're treating him differently because he is the owner and because he is a defaulting borrower.

The Court: No, sir.

. . . .

The Court: My concern, I'm not going to keep beating a dead horse[,] but ... and this don't need to be on the record. To me[,] the whole issue is and I think throughout this circuit, *as a referee*, right or wrong, *you typically exercise some discretion* in, within the requirements of the deed, making that deposit. And I think normally[,] it's everything from when you walk back to the attorney's office or you do like Mr. Moore was, how long is it going to take you to have the money. I can get

it here by such and such. If Mr. Moore had had an attorney that would stand as a member of the Bar and indicate to me that he had the money and he would have it in my office at 5:00 o'clock[,] I don't think we would have been here. But what you, Mr. Jordan, are asking me to accept is that here's a man that all along had the full amount, whatever he was going to bid, had that money available. *Does it not make sense that he would have gone and made arrangements to catch up those two mortgages if he would have had the money available to him? I mean, why, if he had $98,000.00 he could have brought things current months ago. And I know I'm getting beyond what we're hearing today[,] but isn't that just common sense.*

Moore's Counsel: That's what I'm saying. It appears to be some $140,000 worth of ....

The Court: That's the principal too. No, sir, he could have brought them current.

Moore's Counsel: Well, what I'm saying is that if he bought the property back at $96,000.00[,] he has therefore saved what amounts to maybe $45,000, $50,000.

The Court: By beating his credit.

Moore's Counsel: Well, okay, here we go again, Your Honor. This the whole point. I think you're treating Mr. Moore differently because he, in fact, seems to be a guy who beats his credit.

The Court: *I'm treating him differently because he had absolutely no credit worthiness based on the debts in this case.*

. . . .

The Court: The Court's not trying to protect anybody. The only thing I'm trying to ensure is that somebody ... the purpose of a bid is that you're going to come up with the rest of your money. If you don't[,] then it's some detriment to you. And again, in that *Hudson* case,[5] if such a person can resell the property being at a profit or finds that he's made a profitable purchase[,] then he makes his check good and complies with his bid, otherwise he does

5. *Hudson v. Inman,* 179 S.C. 399, 184 S.E. 102 (1936).

nothing and there's not [sic] redress to him. And that's talking about a personal check or certified check, but isn't that really what the issue is? Let's assume Mr. Moore had not come up with the money, he would be out absolutely nothing.

Moore's Counsel: Oh, certainly. In other counties[,] he might be doing jail time, Judge. I suspect the way you feel about him[,] he probably would be.

The Court: Don't tempt me. I'd rather stay silent on that.

(emphasis added).

Additionally, Alan W. Pullen, president of Community, who attended the foreclosure sale, testified he was surprised at the referee's time limit requirement applied after Moore's successful bid. He averred he had never witnessed an immediate compliance requirement and that the standard practice in many counties require the deposit paid at the end of the day of the sale. Pullen stated the normal practice in Fairfield County is to allow successful bidders to tender their deposits by 5:00 p.m. the same day of the sale.

On March 31, 1999, Rowe tendered the balance of his bid price on the property to the Clerk of Court for Fairfield County. The special referee confirmed the second sale by order filed April 22, 1999, and orally denied reconsideration of this order on September 29, 1999. On October 6, 1999, Moore filed his notice of appeal. Thereafter, on October 18, 1999, Moore petitioned the South Carolina Court of Appeals for a writ of supersedeas; however, this petition was withdrawn March 6, 2000.

In a letter addressed to all interested parties dated March 8, 2000, the referee stated: "Unless a Motion or other appropriate proceeding is filed objecting to such recording [of the deed to Rowe] and disbursement, I intend to file and disburse on March 17, 2000." The record contains no further correspondence to the referee. Thereafter, the deed to Rowe and the accounting of the special referee were filed March 23, 2000. Community, the first priority lienholder on the property that was sold, moved to dismiss Moore's appeal on the

ground it has become moot. Community's motion was denied by this Court on May 17, 2000.[6]

## STANDARD OF REVIEW

 A real estate foreclosure is an action in equity. *MI Co., Ltd. v. McLean,* 325 S.C. 616, 482 S.E.2d 597 (Ct.App. 1997); *Dockside Ass'n v. Detyens,* 294 S.C. 86, 362 S.E.2d 874 (1987); Jean Hoefer Toal *et al., Appellate Practice in South Carolina* 194 (1999). In an action in equity referred to a master-in-equity or a special referee for final judgment, this Court may take its own view of the preponderance of the evidence although it is not required to disregard the findings of the master or referee. *Lewis v. Premium Inv. Corp.,* 341 S.C. 539, 535 S.E.2d 139 (Ct.App.2000) *cert. granted.*

## LAW/ANALYSIS

 Moore argues the referee erred by prescribing the theretofore unannounced fifteen minute time limit for depositing the earnest money with the court after the close of the first sale of the Fairfield property. We agree.

 The terms and conditions of a judicial sale are controlled by the court order, Rule 71, SCRCP, the practice and

---

6. Community argues again on appeal that this issue is moot. A case becomes moot when judgment, if rendered, will have no practical legal effect upon the existing controversy. *Mathis v. South Carolina State Highway Dep't,* 260 S.C. 344, 195 S.E.2d 713 (1973), *cited in Arnold v. Association of Citadel Men,* 337 S.C. 265, 523 S.E.2d 757 (1999). This is true when some event occurs making it impossible for the reviewing court to grant effectual relief. *Id.* However, a foreclosure sale that was improperly conducted so as to prejudice interested parties is void and, therefore, the sale may be set aside by the reviewing court. *Howell v. Gibson,* 208 S.C. 19, 37 S.E.2d 271 (1946) (holding a mistake or surprise in connection with the sale is grounds for setting it aside provided the mistake is harmful and not a mistake of law or one due to the negligence of the party complaining) (citation omitted); *Farr v. Sims,* 9 S.C. Eq. (Rich.Cas.) 122, 134 (1832) ("If the Sheriff fraudulently sells a debtor's property, his sale, it is conceded, is void. If the sale is void, must not his deed to the purchaser be void also? * * * I apprehend the sale and deed are both nullities."); *Federal Nat'l Mort. Ass'n v. Brooks,* 304 S.C. 506, 405 S.E.2d 604 (Ct.App.1991) (ruling judicial sale was set aside because, in part, the clerk of court, not the designated foreclosure referee, advertised and conducted the sale). Moore's action is not moot.

custom of the county in which the property is being sold, and by statute. *See Federal Nat'l Mortgage Assoc. v. Brooks,* 304 S.C. 506, 405 S.E.2d 604 (Ct.App.1991); Charles B. Simmons Jr., *A Primer for Mortgage Foreclosures in South Carolina,* 6 S.C. Lawyer 29, 31 (May/Jun 1995).

At a minimum, the trial court's order of judgment shall contain: (1) a sufficient legal description of the property being sold; (2) a provision for the necessary legal advertisement; (3) the time and location of the sale; (4) notice of any senior liens, taxes, or other rights to which the property to be sold is subject; (5) the amount of good faith deposit necessary at the time of the sale; and (6) the date that compliance must be made with the bid. Rule 71(b), SCRCP; *see also* S.C.Code Ann. § 15–39–660 (1977) (reciting substantially similar requirements that must be advertised); *Farr v. Sims,* 9 S.C. Eq. (Rich.Cas.) 122 (1832) (noting minimum requirements for notice to the public for a judicial sale); 47 Am.Jur.2d *Judicial Sales* § 74 (1995) ("A notice of sale should give the title of the cause, describe the property to be sold, and state the date, hour, place, and terms of the sale. As a practical matter, a notice is sufficient if it gives the title of the cause and the date of the decree and states that the sale will be made in pursuance of the decree.").

Essentially, through this order, the trial court is fulfilling its duty to properly inform the public of every material element of the judicial sale. That is, "[t]o enable persons to buy, they ought to be apprised of the terms on which the property is to be sold." *Farr,* 9 S.C. Eq. at 131. Thus, the courts reviewing a judicial sale should guard against any undue surprise or partiality affecting the sale. "[A]ny conduct on the part of those actively engaged in the selling or bidding [at a judicial sale] that tends to prevent a fair, free, open sale or stifle or suppress free competition among bidders, is contrary to public policy, vitiates the sale, and constitutes ground for setting it aside upon the complaint of the injured party." *Ex parte Keller,* 185 S.C. 283, 291, 194 S.E. 15, 19 (1937) (citation omitted).

This being said, we reiterate the well-established rule for South Carolina foreclosure sales that:

A judicial sale should not be set aside except for cogent reasons. The purpose of the law and of the proceedings in which a sale has been decreed is that it shall be final. As was said in *Farrow v. Farrow*, 88 S.C. 333, 70 S.E. 459 [1911], the successful bidder makes himself a party to the cause, and, except where title to the property is defective, or where he can show fraud, misrepresentation, mistake, or other circumstances of unfairness in the sale, he may be compelled by the court to perform his contract of purchase. In the absence of such circumstances, therefore, his contract should be upheld. These principles are well established. *Henry v. Blakely*, 216 S.C. 13, 56 S.E.2d 581 [1949]; *Appeal of Paslay*, 230 S.C. 55, 94 S.E.2d 57 [1956].

*Spillers v. Clay*, 233 S.C. 99, 104, 103 S.E.2d 759, 761–62 (1958) (citations omitted); *see also Federal Nat'l Mortgage Ass'n v. Brooks*, 304 S.C. 506, 510, 405 S.E.2d 604, 606 (Ct.App.1991) ("[W]here there are other circumstances tending to show the sale should, in good conscience, be set aside, disparity between the accepted bid and the fair value of the property [7] as disclosed by the evidence is a proper factor to be considered by the court in arriving at its decision.") (citation omitted); *Brownlee v. Miller*, 208 S.C. 252, 265, 37 S.E.2d 658, 664 (1946) ("It is the established rule of this jurisdiction to uphold judicial sales, when regularly made, 'when it can be done without violating principle or doing injustice.' ") (citation omitted).

 " 'But the circumstances impeaching the fairness of the transaction should relate to the *conduct of the officer making the sale,* as in *Farr v. Sims,* [citation omitted], or to

---

7. When consideration is so inadequate that it shocks the conscience of the court, the sale is void and will be set aside. *See Hamilton v. Patterson*, 236 S.C. 487, 494, 115 S.E.2d 68, 71 (1960) ("It is well settled in this State 'that inadequacy of price, unless so gross as to shock the conscience of the court or accompanied by circumstances from which fraud may be clearly inferred, will not justify the overthrow of a judicial sale.' ") (citation omitted); *Hughes v. Wilburn*, 156 S.C. 443, 153 S.E. 487 (1930) (ruling a bid one-eightieth of the inventoried value of the property was so grossly inadequate as to be shocking to the court); *Peoples Fed. Sav. & Loan Ass'n v. Graham*, 291 S.C. 178, 352 S.E.2d 511 (Ct.App.1987) (holding sale price of $48,100, received for mortgaged property subsequently appraised at $73,000, was not so inadequate as to shock the conscience or to give rise to inference of fraud so as to require that judicial sale be set aside).

the conduct of the purchaser participating in the attempt to stifle competition or affected with notice thereof [citations omitted].'" *In re Wallace*, 179 S.C. 480, 484, 184 S.E. 849, 851 (1936) (emphasis added) (citation omitted); *Metropolitan Life Ins. Co. v. Sansbury*, 164 S.C. 452, 162 S.E. 579 (1932); *Hughes v. Wilburn*, 156 S.C. 443, 153 S.E. 487 (1930); *Ex parte Cooley*, 69 S.C. 143, 48 S.E. 92 (1904). That is, "where a party in interest has been misled to his detriment by the officer making the sale, *through no fault of his own*, relief may be had." *Hudson v. Inman*, 179 S.C. 399, 406, 184 S.E. 102, 105 (1936) (emphasis in original) (quoting *Bonham v. Cave*, 102 S.C. 308, 311–12, 86 S.E. 681, 682 (1915)); *see also* 50A C.J.S. *Judicial Sales* § 79 (1997) ("A mistake or some surprise or accident in connection with a judicial sale is ground for setting it aside, either before or after confirmation, provided the mistake was an injurious one, and would result in no substantial hardship other than rescinding the bargain.").

In this appeal, we must analyze the special referee's actions in conjunction with his order of sale. Although the referee acted as his own selling officer, he was still bound by the limits of his written decree of sale. When the public has been informed through the order and the advertisements, the rules of the foreclosure sale are set.[8] *See Ex parte Keller*, 185 S.C. 283, 194 S.E. 15 (1937) (recognizing the legal principle that an order of sale is a public document, and all bidders, as well as other persons, are charged with notice of its terms); *Hudson v. Inman*, 179 S.C. 399, 184 S.E. 102 (1936); *see also Federal Nat'l Mortgage Ass'n v. Brooks*, 304 S.C. 506, 405

---

8. In limited circumstances, however, a court ordering the foreclosure sale may amend its own order. Thus, for example, in *In re Receivership of Great Western Beet Sugar Co.*, 22 Idaho 328, 125 P. 799 (1912), the receiver auctioning property was given leave to extend the time period for the successful bidder to tender his twenty five percent deposit. The decree originally required the receiver to "promptly collect any cash payment required" at the time of sale. *Id.* at 801. However, the appellate court found the trial court could reasonably extend the time to comply "where no injury is done to any one by failure of the purchaser to pay at once the sum due on his bid." *Id.* That is, "a trial judge in equity ... has discretionary power to modify all orders affecting such sale by subsequent orders." *Id.; cf. Goethe v. Cleland*, 323 S.C. 50, 448 S.E.2d 574 (Ct.App.1994) (stating a special referee retains jurisdiction over foreclosure proceedings after the sale of the property to correct clerical errors in its judgment order of sale).

S.E.2d 604 (Ct.App.1991) (stating the purchaser should principally rely on, and is on notice of, the terms provided in the foreclosure decree).

 Generally, "[i]n the conduct of a judicial sale, the selling officer acts in a ministerial capacity as the arm of the court to carry out its orders." *Brooks,* 304 S.C. at 510, 405 S.E.2d at 606 (citation omitted). "He in no way acts in a judicial capacity." *Id.* Thus, the selling officer has no authority to modify the terms and conditions of the foreclosure decree in any material way. *Id.; see also* 47 Am.Jur.2d *Judicial Sales* § 114 (1995) ("Since the officer conducting the sale must abide by the terms and conditions of the decree or order of sale, he or she may not alter the terms as set forth in the order of sale.") (footnotes omitted). The officer has very little discretion and must conduct the sale within the confines of the decree.

The amended foreclosure order of the Fairfield property set forth, in relevant part, that the sale was:

FOR CASH. The Special Referee will require a deposit of five (5%) per cent of the amount bid (in cash or equivalent), the same to be applied on the purchase price upon compliance with the bid, but in case of noncompliance within 30 days after the date of the sale, same to be forfeited and applied to costs and the first mortgage lien.

Clearly, by these terms, the purchaser was required to tender his entire bid within a set time after the foreclosure sale. He was also required to tender a deposit at some point to prove his good faith bid on the property. However, we read no requirement that the purchaser was to tender this deposit immediately after the hammer falls closing the sale. This provision says nothing of the timing requirements for a sale. In fact, the exact timing of a judicial sale is not set by statute; rather, under the direction of a master[9] or other appropriate court officer, the sale is conducted on the day of sale between "eleven and five o'clock." S.C.Code Ann. § 15–39–690 (1977); Rule 71(b), SCRCP. However, the officer may prevent sales before they start by giving notice that the sales

---

9. Referees abide by the same provisions for masters. S.C.Code Ann. § 15–39–635 (Supp.2000).

for that day have been closed. S.C.Code Ann. § 15–39–690 (1977); *see also Pickett v. Pickett,* 11 S.C. Eq. (2 Hill Eq.) 470 (1836) (holding subsequent sale of property after sheriff announced he would sell no more property that day was void).

When, as in the case at hand, the foreclosing creditor waives his right to a deficiency judgment, the sale is deemed closed on the day of sale and the advertisement of sale should state "that no personal or deficiency judgment is demanded and that the bidding will not remain open after the sale *but that compliance with the bid may be made immediately.*" S.C.Code Ann. § 15–39–760 (1977); *see also Goethe v. Cleland,* 323 S.C. 50, 448 S.E.2d 574 (Ct.App.1994) (stating where no deficiency judgment is requested, the bidding in the foreclosure sale need not remain open for thirty days to allow for upset bids); Rule 71(b), SCRCP ("Unless the pleadings state that no personal or deficiency judgment is demanded or any right to such judgment is expressly waived in writing, the bidding shall not be closed upon the day of sale but shall remain open until the thirtieth day after such sale exclusive of the day of the sale.").

Here, however, the referee did not require immediate compliance for the bid either in his order or in his amended notice of sale; instead, the referee required compliance within thirty days after the date of the sale. Without further explanation, the referee also stated in his order that he "will require a deposit of 5% on the amount of the bid (in cash or equivalent)." A decree of sale may require a good faith deposit or guaranty of cash "at the conclusion of the bidding." S.C.Code Ann. § 15–39–740 (1977). However, this earnest money is not required prior to the conclusion of the bidding and can be no more than 5% of the bid price. *Id.* "Such a deposit is a proper safeguard against spurious bidding upon the one hand and an aid in carrying into effect the terms of sale upon the other." *Ex parte Floyd,* 145 S.C. 364, 375, 142 S.E. 805, 808 (1928); *see also Hudson v. Inman,* 179 S.C. 399, 184 S.E. 102 (1936) (stating the requirement of an earnest money deposit promotes the purchasing party's compliance with the terms of sale). Thus, for example:

To allow a person who is not financially responsible to give a worthless check as a deposit places such person in the advantageous position of complying with his bid at his

pleasure. If such person can resell the property bid in at a profit, or finds that he has made a profitable purchase, then he makes his check good and complies with his bid; otherwise, he does nothing and there is no redress.

*Hudson,* 179 S.C. at 403, 184 S.E. at 104; *see also* 47 Am. Jur.2d *Judicial Sales* § 134 (1995) ("The requirement of a deposit of cash or other security by prospective bidders, to insure compliance with the contract of sale on the part of one whose bid is accepted, is customary.") (footnote omitted).

▇▇ As with the referee's authority to set and advertise the timing for compliance with the bid, the referee may establish a time for the earnest money deposit. Here, the special referee's order was silent as to the time when the earnest money deposit was required to be paid. Lacking such guidance, Moore, as the prevailing bidder, had a reasonable time within which to tender his deposit. The law does not require immediate compliance without warning. The earnest payment merely illustrates the prospective purchaser's bona fide assurance to the court that he fully intends to perform under the purchase contract.

Here, Moore bid on the property expecting he would have a reasonable time within which to tender his earnest payment to the court. Instead, he was "stunned," as were others, by the referee's pronouncement of an immediate tender requirement. Moore testified he attempted to reach his financier within the fifteen minute window to cover his 5% earnest obligation. Although he was unable to deposit his money within the newly prescribed time limit, Moore did, in fact, tender the requisite deposit by 4:30–4:45 p.m. on the same day of the sale. The only evidence contrary to Moore's good faith efforts to comply is the referee's acknowledged different treatment of Moore as a credit risk. We find it was unreasonable for the referee to spring the restrictive time limit on the parties, without notice, and after conducting the sale under different terms.

In *Farr v. Sims,* 9 S.C. Eq. (Rich.Cas.) 122 (1832), the Court of Appeals found a judicial sale void where the advertisement stated the sale was for cash, but the officer demanded payment in specie upon request of a creditor. The Court noted:

This was a short notice; but if the Sheriff had advertised the sale to be for specie, it might have availed to protect

them both [the sheriff and the creditor] from legal censure. As it was, however, the Sheriff gave no such notice until the day of sale, and this failure of duty, on his part, must also attach to the creditor; for, in effecting the sale, the Sheriff is the agent of the creditor, the debtor, and the purchaser, and his acts may, more or less, affect them all.

*Id.* at 131.

When the officer changed the conditions of the sale, "[i]t was, in fact, a sale without being advertised, for one of the most important conditions of the sale was not disclosed in the advertisement. In this respect, the sale was void, for want of authority on the part of the Sheriff to sell." *Id.*

In *Ex parte Keller*, 185 S.C. 283, 194 S.E. 15 (1937), the master supplemented the foreclosure decree with a condition not found in the decree. Quoting *McMaster v. Arthur*, 33 S.C. 512, 515, 12 S.E. 308, 309 (1890), the *Keller* Court stated:

The master supplemented the order of the court by a condition not found in said order, to-wit, that the land should be sold subject to the claim of the homestead. *This addition to the order was made by the master on the day of sale*, when Crawford & Co., attorneys of the petitioner, gave notice of this claim. But by what authority could the master thus supplement said order? We know of none; and, even admitting for this case, that, had the order been carried out according to its terms, the result might have been different, yet, said order not having been executed, the matter stands as if there had been no sale. *It was a void sale, the master having no authority to sell as he did* (*Baily v. Baily,* [30 S.C.Eq.] (9 Rich.Eq.) [392], 395 [1857]), and consequently the petitioner was not bound to pay in her bid.

*Id.* at 294, 194 S.E. at 20 (emphasis added), *cited with approval by Federal Nat'l Mortgage Ass'n v. Brooks,* 304 S.C. 506, 405 S.E.2d 604 (Ct.App.1991).

The *Keller* Court also explained that the open-ended statutory provision for the purchasing party's compliance guarantees the purchasing party a reasonable time to tender his bid, if due the day of sale, or his earnest money, if no specific time is given. The sale order required the successful bidder to tender 3% of his bid with the court "immediately after the sale

as evidence of good faith." *Id.* at 289, 194 S.E. at 18. Among other problems, the appellant failed to accompany his winning bid with a contemporaneous earnest money deposit. The Court thus interpreted the timing requirement and concluded:

It follows that even had the bid of appellant been a legal bid, he could not be declared the highest bidder not having complied with the terms of the order of sale, bottomed upon the statute, by filing with the special referee the necessary deposit either in cash or certified check, ***immediately following his bid, or within a reasonable time thereafter on that day.***

*Id.* at 296, 194 S.E. at 21 (emphasis added).

Stated another way, a purchaser who has demonstrated the prima facie intent to comply with the earnest deposit may deposit this sum with the court no later than by the end of the day of sale at 5:00 p.m. Where the party is on notice of a set time when compliance must be made, on the other hand, he is effectively estopped from denying the efficacy of the mandate. *See Hudson v. Inman*, 179 S.C. 399, 404, 184 S.E. 102, 104 (1936) ("[A] bidder not complying with the terms of the decree and the advertisement will not be heard to complain that he was lulled into security in not being required publicly to comply with the terms of the decree and advertisement of the sale of the property."); *see also Ex parte Floyd*, 145 S.C. 364, 379, 142 S.E. 805, 810 (1928) (holding that since the decree required the purchaser to deposit his earnest money before 4 o'clock on the day of sale, "then it was equally necessary that the purchaser at the second sale [at 4 o'clock] make the required deposit immediately. Otherwise it was wholly unnecessary to have a resale, for the manifest purpose of requiring the deposit and providing for the resale was to have in hand the deposit before 4 o'clock, or immediately thereafter.").

Delving further, we note *Keller* is merely restating the basic tenets of the common law. We find an early expression of this most basic principle in *Seymour v. Preston*, 17 S.C. Eq. (Speers Eq.) 481 (1844). In *Seymour*, the sheriff of Charleston conducted a foreclosure sale wherein Seymour made the highest bid equal to the mortgage debt on the property with nothing left for the junior judgment lienholders. However, Seymour did not timely tender his bid. He did not tender his

bid until after receiving notice that the purchaser at a second sale of the property had already complied with his bid. Although the court found Seymour had forfeited his right under the contract of sale by not complying with his bid, the court conclusively re-emphasized that Seymour could have secured the property by complying with his bid on the day of sale. The court explains:

> [N]o one will be found hardy enough to contend, that if one agree[s] to sell property to another for cash [in an analogous private sale], and the purchaser offer[s] him the money two months after, the seller would be bound to perform his part of the contract; and that is this case. By the law and usage regulating sheriff's, and other official sales, a purchaser at a sale for cash, must pay the money *on the day of sale*. I know ... that it frequently happens that the officer making the sales takes upon himself to allow the purchaser a short time to pay the money, and there is no impropriety in it, when it is done with the assent of the creditor and the debtor, ... [but] if the purchaser has neglected to pay the purchase money, he has forfeited his right under the contract of sale, certainly he is not entitled to favor.

*Seymour,* 17 S.C. Eq. at 485 (emphasis added), *cited in* 50A C.J.S. *Judicial Sales* § 38 (1997) ("In the absence of a statute otherwise providing, when the sale is for cash, payment in cash should be made on the day of sale in order to entitle the purchaser to have the sale confirmed.").

Thus, "in the absence of fraud or collusion, we do not think that a failure to comply literally with the terms of sale as to the cash payment, *the moment the hammer falls*, is such failure in itself as will in every case forfeit the bid." *Yates v. Gridley,* 16 S.C. 496, 502 (1882) (emphasis added).

Our review of the record reveals Moore tried, in good faith, to comply with the special referee's surprise edict after the fact that he should tender his earnest money fifteen minutes after the close of the bidding. Thereafter, by 4:30–4:45 p.m. the same day of sale, Moore deposited his earnest money with the court as proof of the veracity of his bid. This assurance, however, was too late to appease the referee for the property had already been resold. The referee's support for the resale, however, came not from the efforts of the successful bidder

before him or based on any provisions, in fairness, disclosed to the prospective purchasers before the auction; rather, the referee's reaction came from his own knowledge of the proceedings leading up to the foreclosure sale.

The referee admits he "[treated Moore] differently because [Moore] had absolutely no credit worthiness based on the debts in this case." We agree Moore's standing as a debtor is a proper factor for the court to consider. Nevertheless, while it is valid for the selling officer to require guaranteed funds to discourage spurious bids, the officer has no discretion to make surprise announcements that have a chilling effect on the bidding. *See Hamrick v. Summey*, 282 S.C. 424, 320 S.E.2d 703 (1984).

In *Hamrick*, all of the persons attending a creditor's auction were recognized by the sellers except for the highest bidder. Under the rules of the auction, a successful bidder was required to make a 20% deposit on the day of sale by cash or check approved by the seller. However, since the highest bidder was unknown, the officer refused to accept his check unless he signed an agreement to bring certified funds two days later. The unknown bidder refused to comply with this requirement. The property was then resold and the Circuit Court confirmed the second sale. On appeal, the Supreme Court found "[t]here was no discrimination against [the unknown bidder] in seeking to have him pledge certificates of deposit on the Monday following the sale, but this was merely an effort to give some strength and credibility to his bid." *Id.* at 429, 320 S.E.2d at 706. That is, accepting the unknown bidder's uncertified check "would have jeopardized the entire sale." *Id.*

▮ If the purchaser is ready and willing to secure his deposit in compliance with his bid, the selling officer can not change the terms for the judicial sale. "All that the Court can require, therefore, is, that he should do now, what he ought to have done then; give [security] according to the terms of the sale." *Young v. Teague*, 8 S.C.Eq. (Bail.Eq.) 13, 20 (1830); *see also* 50A C.J.S. *Judicial Sales* § 40 (1997) ("If, however, the purchaser was always ready and willing to furnish the security required by the order of sale, the failure of the commissioner to take it is not ground for setting the sale

aside, but the purchaser will be required to comply.") (citing *Teague*, 8 S.C. Eq. at 20).

In *Teague*, the purchaser was ready and willing to execute his bond on the property, but the commissioner declined to take it "because he thought it an unnecessary expense." *Teague*, 8 S.C. Eq. at 15–16. The commissioner delivered titles to the purchaser; thereafter, other attendees at the sale sought to set aside these deeds arguing they had intended to bid more for the property at the auction themselves. However, because the purchaser's minor non-compliance was caused by the selling officer and "[i]t appears [the purchaser] did not refuse [to comply], but on the contrary was ready and willing to comply," the sale to him was valid. *Id.* at 20.

Even if the referee's surprise edict was a valid amendment to his order, we find the referee's strict construction of the order's limitations is unwarranted. To defeat the first sale of the Fairfield property, the referee relies on our statutory requirement that a purchaser must comply with every requirement dictated in the judgment order to honor the sales contract. That is:

> If the purchaser shall fail to comply with the terms aforesaid[,] the [officer] shall proceed to resell at the risk of the defaulting purchaser either on the same or some subsequent sale day, as the plaintiff may direct, and, in the absence of any direction by the plaintiff, the [officer] shall resell on the same day, if practicable, and if not on the next succeeding sale day, making in every such case proclamation that he is reselling at the risk of such defaulting former purchaser.

S.C.Code Ann. § 15–39–710 (1977); *see also Metropolitan Life Ins. Co. v. Sansbury*, 164 S.C. 452, 162 S.E. 579 (1932).

This statutory limitation has been in effect in South Carolina for more than a century. However,

> [this statute] was not intended to prevent a bona fide purchaser from receiving title because he was not prepared to comply with his bid at the moment the hammer fell to 'shell out the cash.' In this day of banks, drafts, and checks, it is not to be expected that a bidder at sheriffs' sales should be laden down with rolls of currency with which to comply with his bid. It is not progressive and in keeping with the spirit of the age. It is not equitable.

*Brown v. Barnwell Mfg. Co.*, 46 S.C. 415, 420, 24 S.E. 191, 193 (1896).

In *Brown,* a certain lot was knocked down to the attorney for Simon Brown. After compiling the documents of the sale, the sheriff asked the attorney to comply with his bid immediately, extended to approximately two hours after the sale. The attorney tried to reach Brown to no avail, during which time the property was resold. The *Brown* Court found this strict construction of the statute was unwarranted. The tribunal explained:

> Under all the circumstances, it seems to this court that the sheriff should have, at least, allowed the attorney all the time possible *before the expiration of the legal hours of sale, on the day when the property was sold,* for complying with his bid; especially when the attorney was taken by surprise by the requirement of strict compliance with the terms of sale.

*Id.* at 425–26, 24 S.E. at 195 (emphasis added).

## CONCLUSION

We rule that a purchaser at a foreclosure sale has until 5 o'clock p.m. on the sales date *unless* the order of the court and the notice of sale *specifically* provide for a different payment time for the deposit.

We find the special referee's surprise amendment to his order of sale after the close of the bidding was invalid. The referee's action does not comport with our understanding of the fairness inherently necessary in a foreclosure sale or with the common law that, unless modified by the decree, does not require an immediate tender of the purchaser's deposit the moment the hammer falls. Without pre-announced limits, the highest bidder at a foreclosure sale who has the manifest intent to comply with his bid has until the end of the day of sale to tender his earnest deposit with the court.

The referee erred in setting aside the first sale of the property prematurely. Thus, the second sale is invalid and should be set aside. Although an innocent third party who bids and wins at the second foreclosure sale "should not be punished for the fraud of another [that voids this sale], he shall not avail himself of it." *Farr v. Sims,* 9 S.C. Eq.

(Rich.Cas.) 122, 133 (1832) (quoting *Robson v. Calze,* 1 Doug. 228). For the foregoing reasons, we find the decision of the special referee is

**REVERSED.**

HUFF, J., concurs.

SHULER, J., concurring in result only.

SHULER, Judge, concurring in result only:

Although I concur in the ultimate judgment of the Court, I write separately to express my concern over the wisdom of adopting a bright-line rule of 5:00 p.m. on the day of the foreclosure sale for deposits to be made, in the absence of any specific provisions in the order or notice of sale. In my view, this Court has neither the authority nor legal support to establish such a rule.

Initially, because the requirements for a judicial sale are governed primarily by statute and Rule 71, SCRCP, and no provision sets forth a precise time for the payment of bid deposits, I believe the establishment of a five o'clock deadline is wholly within the province of our Legislature. *See Henderson v. Evans,* 268 S.C. 127, 130, 232 S.E.2d 331, 333 (1977) ("[I]t is not the province of [a court] to perform legislative functions.").

Moreover, our case law is clear that the rules regarding such matters are discretionary with the selling authority, subject only to a requirement of reasonableness. *See Ex parte Keller,* 185 S.C. 283, 289, 296, 194 S.E. 15, 21 (1937) (interpreting the phrase "immediately after the sale" in a judicial sale order referencing a required 3% good faith deposit to mean either "immediately following [the] bid, or *within a reasonable time thereafter* on that day") (emphasis added); *Harrington v. Blackston,* 311 S.C. 459, 464–65, 429 S.E.2d 826, 830 (Ct.App.1993) ("Except to the extent controlled by statute, the terms of a judicial sale are within the discretion of the court ordering the sale.").

Reasonableness, in turn, depends on the circumstances of each sale. *See Ex parte Floyd,* 145 S.C. 364, 367, 142 S.E. 805, 807 (1928) (holding that even where the terms of a judicial

sale order specified $500 be deposited on the bid "before 4 o'clock p.m. on the day of [the] sale," the time for paying the deposit could be extended in the master's discretion where warranted by the facts and circumstances, including the parties' waiver of any time requirement); *Brown v. Barnwell Mfg. Co.*, 46 S.C. 415, 422, 424–26, 24 S.E. 191, 193–95 (1896) (in holding that "[u]nder all the circumstances . . . the sheriff should have, at least, allowed the purchaser all the time possible before the expiration of the legal hours of sale, on the day when the property was sold, for complying with his bid . . .," the supreme court, regarding appellant's exception (7), wherein it was claimed the trial court erred in "holding and concluding *as a matter of law* that the [purchaser] had until the expiration of the legal hours of sale within which time to comply with the bid," stated: "A careful consideration of the decree of the circuit judge satisfies us that the seventh [and other] exceptions were taken under a misapprehension of said decree. *The language of the circuit court was intended merely to illustrate the spirit of our statute* relating to resales by sheriffs.") (emphasis added); *Yates v. Gridley*, 16 S.C. 496, 497, 504 (1882) (affirming sale to purchaser who failed to comply with exact terms of judicial sale, i.e., "cash sufficient to pay costs and disbursements of suit," by paying such not on the day of sale in December but sometime in January; supreme court held the fact that the terms of the sale were not immediately complied with when they were met "within so short a time afterwards" was insufficient to annul purchaser's deed).

In addition, I think the decision to craft such a rule would conflict with S.C.Code Ann. § 15–39–690 (1977), which states: "The hours of [a judicial] sale shall be between eleven and five o'clock." If, under the terms of the statute a judicial sale can occur as late as 5:00 p.m. on the date of sale, then, under the proposed rule, a purchaser would have no time to make the required deposit.

Finally, I believe an absolute five o'clock deadline would not comport with standard principles of equity governing judicial sales. Accordingly, because the statutory scheme governing foreclosure sales is silent and our cases in the past have imposed a reasonableness requirement but not an absolute deadline, I would decline to do so now.